[No. 36599. Department One. October 3, 1963.]

THE STATE OF WASHINGTON, on the Relation of Howard J. Craven et al., Appellants, v. THE CITY OF TACOMA et al., Respondents.*

Dodd & Russell, for appellants.

Marshall McCormick, Robert R. Hamilton, and Edward J. Guenther, for respondents.

HALE, J.—Relators seek a writ of mandamus to compel the city of Tacoma to issue them a building permit. Their property is situated in the North Shore Country Club Estates of northeast Tacoma. From a judgment denying the writ, relators appeal.

We are controlled by the facts as the court declared them in its findings. The North Shore Country Club Estates, Inc.,

*Reported in 385 P. (2d) 372.

grantor to relator by warranty deed, owns a large tract of land in northeast Tacoma. It platted these lands and filed the plat thereof for record in the office of the Pierce County Auditor; it likewise made surveys for many, and actually put in, certain streets. The courses, angles and grades of the streets within the plat were approved by the city engineers. Thereupon, the corporation submitted the plat to the city of Tacoma for its official approval, as is required by RCW 58.16.030 before any of the lots in the plat may be sold.

The city refused official approval, claiming that provisions for storm sewers and street construction failed to meet the minimal standards set by city ordinance for plat approval. This refusal received confirmation by the trial court when it found that the streets within the platted subdivision had not been surfaced, that the ballast in them was substandard, that the road base contained an excess of silt and fine materials, and that adequate storm drainage had not been provided.

At the outset, relators urged that they were entitled to a building permit as lessees under a 99-year renewable lease, but this claim was laid to rest under the court's specific finding. The trial judge found that on July 20, 1960— a date subsequent to the execution of the claimed lease— North Shore Country Club Estates executed and delivered to relators a warranty deed to lot 6, block 5, in the recorded plat, the land conveyed being more particularly described in the instrument by metes and bounds. This deed was filed for record and indexed as a deed in the office of the Pierce County Auditor.

Some 8 months later—and while the plat was still unapproved by the city—relators, as owners of a platted lot, applied to the building department of the city of Tacoma for a building permit to enable relators to construct a residence on their property. Officials of the city informed relators that their lot lay in an unapproved platted area, and that it would issue no permits for construction on any properties within the North Shore Country Club Estates plat. The city declined to furnish relators with an application form for a permit, and stated that, if one were tendered, it

would be neither accepted nor processed. Its only ground for refusal to accept relators' application for, or to issue to them, a building permit was the failure of North Shore Country Club Estates to obtain approval of its plat. At no time did the city intimate that relators' proposed plans and specifications failed to comply with the city's zoning regulations or were otherwise insufficient or defective.

Building permits are issued by the city of Tacoma by virtue of the Code of the City of Tacoma, § 2.02.070, which reads:

"    . . .

"Plans and specifications shall be drawn to scale upon substantial paper or cloth and shall be of sufficient clarity to indicate the nature and extent of the work proposed and show in detail that it will conform to the provisions of this code and all relevant laws, ordinances, rules and regulations. The first sheet of each set of plans shall give the house and street address of the work and the name and address of the owner and person who prepared them. Plans shall include a plot plan showing the location of the proposed building and of every existing building on the property. . . ."

Immediate responsibility for the issuance of building permits is fixed by § 302(a) of the Uniform Building Code (1958 ed.), which has been made a part of the Tacoma Building Code by adoption on October 18, 1960. Section 302(a) reads, in part:

"The application, plans, and specifications filed by an applicant for a permit shall be checked by the Building Official. Such plans may be reviewed by other departments of the city to check compliance with the laws and ordinances under their jurisdiction. If the Building Official is satisfied that the work described in an application for permit and the plans filed therewith conform to the requirements of this Code and other pertinent laws and ordinances, and that the fee specified in Section 303(a) has been paid, *he shall issue a permit therefor to the applicant.*" (Italics ours.)

The city claims that, under the foregoing provisions, it can make compliance with all other pertinent laws and ordinances conditions precedent to its duty to issue a permit, and argues that it may, under these ordinances, make offi-

cial approval of a plat one of these conditions. Under this theory, and by virtue of powers claimed through RCW 58.16, *et seq.*, the city says that it can properly deny a building permit to one intending to build on property within an unapproved but platted area.

We think that the city has mistaken its remedy. Under one of the sections of the statute by which it claims the right to refuse a building permit it could have enjoined the sale from the platter, North Shore Country Club Estates, Inc., to relators, or enforced a penalty against the grantor under RCW 58.16.100, which states:

"The owner or agent of the owner of land located in a plat or subdivision, who transfers or sells, or agrees to sell or option any land by reference to or exhibition of or by any other use of a plat or map of a subdivision, before it has been approved and filed shall forfeit and pay a penalty of one hundred dollars for each lot or parcel so transferred, or sold or agreed or optioned to be sold. The description of the lot by metes and bounds in the instrument of transfer, agreeing or optioning, shall not exempt the transaction from the penalty, or from the remedies herein provided. The city, town, or county authority may enjoin the transfer, sale agreement, or option by action in the superior court, or may recover the penalty in a civil action: . . ."

■ But the statute does not suffer the city to visit the sins of the grantor upon the grantee. Both the provisions for fixing a penalty and granting injunctions in the foregoing statute are directed against the owner of land, or his agent, who transfers or sells it before the plat or map of the subdivision in which it lays has been approved. They are not directed against a bona fide purchaser, and failure of the grantor to comply with the platting statutes and ordinances does not give the city grounds to refuse his bona fide grantee a building permit. Nothing in the findings of fact suggest that relators are other than bona fide in their efforts to obtain a building permit.

■ We agree with respondents that mandamus does not lie to compel the performance of discretionary acts unless the discretion so exercised has been arbitrary and

capricious. *Stoor v. Seattle*, 44 Wn. (2d) 405, 267 P. (2d) 902. But the acts called upon by relators to be done when they asked for a building permit under the city zoning regulations and building code were not discretionary but ministerial. The building department of the city has no discretion to refuse a permit save to ascertain if the proposed structure complies with the zoning regulations. Once that is done and the appropriate fee tendered by the applicant, the building department must issue the building permit. While the staff of the department may properly be charged to inform other divisions of the city government concerning violations of laws governing the use of land, this is and remains an intergovernmental procedure and does not grant to or enlarge any discretion in the public officer where it is not otherwise expressly done so by law.

Our view, that the issuance of a building permit is a ministerial act for which mandamus will lie where compliance with the zoning regulations is shown, is supported by a quite similar case reported in *Munns v. Stenman*, 152 Cal. App. (2d) 543, 314 P. (2d) 67. It was there held that the city's officers could not lawfully prevent an innocent purchaser the use of his land because he bought into an illegally subdivided tract. The city refused the building permit as a means to force the owners of residential lots to compel the developers of the subdivision into compliance. Holding that the issuance of a building permit is a ministerial duty, and that discretion is limited to ascertaining if the proposed structure meets the zoning standards, the court compelled issuance of the building permit by mandamus.

If we bear in mind that the building permit in the instant case was refused by the city solely because the lot on which the residence was to be erected lay within an unapproved subdivision, and not because the proposed structure would violate the zoning regulations or depart from the ordinances governing construction practices, we can see the ready application of our ruling in *State ex rel. Ogden v. Bellevue*, 45 Wn. (2d) 492, 275 P. (2d) 899, where we said:

"A property owner has a vested right to use his property under the terms of the zoning ordinance applicable thereto. *State ex rel. Hardy v. Superior Court*, 155 Wash. 244, 284 Pac. 93. A building or use permit must issue as a matter of right upon compliance with the ordinance. 9 Am. Jur. 203, § 7. The discretion permissible in zoning matters is that which is exercised in *adopting* the zone classifications with the terms, standards, and requirements pertinent thereto, all of which must be by general ordinance applicable to all persons alike. The acts of administering a zoning ordinance do not go back to the questions of policy and discretion which were settled at the time of the adoption of the ordinance. Administrative authorities are properly concerned with questions of compliance with the ordinance, not with its wisdom. To subject individuals to questions of policy in administrative matters would be unconstitutional. Art. I, § 12, of the constitution of the state of Washington, provides:

" 'No law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens, or corporations.' "

Once the application for a building permit and the plans and specifications filed with it show that the proposed building will conform to the zoning regulations and meet the structural requirements of the building code of the city, the permit shall issue as a matter of right, and the ordinances vest no discretion in the building department of the city to refuse either the application for or to deny the issuance of the building permit.

Reversed with directions to issue the writ of mandamus in accordance with the views herein expressed.

HILL, FINLEY, ROSELLINI, and HUNTER, JJ., concur.

November 20, 1963. Petition for rehearing denied.