[No. 45608. En Banc. May 29, 1980.]

MERCER ENTERPRISES, INC., ET AL, *Respondents,* v. THE CITY OF BREMERTON, ET AL, *Defendants,* KITSAP LAKE ENVIRONMENTAL ASSOCIATION, *Appellant.*

*Helsell, Fetterman, Martin, Todd & Hokanson,* by *Linda J. Cochran* and *Donald C. Harrison,* for appellant.

*Hillis, Phillips, Cairncross, Clark & Martin, P.S.,* by *Louis D. Peterson* and *Richard R. Wilson,* for respondents.

DOLLIVER, J.—In February 1975, the Bremerton City Council enacted ordinance No. 3210. The ordinance amended the Bremerton zoning code to require that all dwelling units in R–1 districts be provided with 4,800 square feet of land area. Prior to the passage of the ordinance, only 1– and 2–family dwellings had been allowed in R–1 districts. The ordinance is referred to as the "nine units per acre" ordinance because the maximum permissible density was 9.075 dwelling units per acre of land.

Mercer Enterprises, Inc., intended to build a large condominium project on a 49–acre site adjacent to Lake Kitsap and located in an R–1 district in Bremerton. Mercer applied for a building permit for the project on September 3, 1976. Three months later, December 8, 1976, before any action had been taken on the permit application, the Bremerton City Council placed a moratorium on processing of all permits applied for under ordinance No. 3210. On January 6, 1977, Mercer submitted a modification of its project

plans to reduce the number of units in the project. Mercer filed an additional submittal to the Building Department on March 24, 1977. On March 23, 1977, the City repealed ordinance No. 3210.

Mercer's original proposal called for construction of 408 multifamily units on 30.81 acres and 35 single–family residences on 18.5 acres, for a total density for the entire project of approximately 9 units per acre. The September application was for Phase 1 of the project, consisting of 196 units in 11 buildings on 12.31 acres, which exceeded the maximum density permissible under the ordinance. The application was accompanied by a site plan for the entire project. This site plan was required under the zoning ordinance to be filed as a covenant running with the land, binding the site upon the issuance of the building permit to the form of development shown. The site plan showed the projected location of 25 buildings to house multifamily units and outlined the lots on which the single–family residences would be constructed. The entire project thus encompassed single– and multiple–family uses and used open spaces and lower densities in Phase 2 to satisfy density requirements otherwise applicable to each building located within the Phase 1 portion of the project.

After ordinance No. 3210 was repealed, Mercer brought this action against the City seeking a writ of mandamus to compel the City to process the permit application under that ordinance. The trial court entered judgment for plaintiffs after finding that Mercer's rights had vested at the time of the September 3, 1976, application. Kitsap Lake Environmental Association was allowed to intervene in order to appeal the trial court's decision.

The heart of the argument of the Kitsap Lake Environmental Association and the key question before us is whether the September 3, 1976, building permit application was sufficient at the time of its original submission to vest rights in a building permit to Mercer Enterprises. We hold it was.

The majority rule is that a zoning regulation has retroactive effect as to applications made prior to the time the regulation was changed. Thus, most jurisdictions hold that an applicant has no vested right to have its application considered under an amended or repealed zoning ordinance. However, an applicant will be held to have such a vested right if it has made a substantial change in position in reliance on the existing zoning, or if the municipality is estopped from denying the permit by virtue of its bad faith conduct. *See* Annot., *Retroactive Effect of Zoning Regulation, in Absence of Saving Clause, on Pending Application for Building Permit,* 50 A.L.R.3d 596 (1973).

Washington, however, has adopted a minority rule which also has been embraced by Florida, Indiana and Ohio. The Washington rule states that, under the old ordinance, an applicant's rights vest at the time of application as long as the project conforms to existing codes and regulations. In *Hull v. Hunt,* 53 Wn.2d 125, 130, 331 P.2d 856 (1958), we said:

Notwithstanding the weight of authority, we prefer to have a date certain upon which the right vests to construct in accordance with the building permit. We prefer not to adopt a rule which forces the court to search through (to quote from *State ex rel. Ogden v. Bellevue* [45 Wn.2d 492, 275 P.2d 899 (1954)]) "the moves and countermoves of . . . parties . . . by way of passing ordinances and bringing actions for injunctions"—to which may be added the stalling or acceleration of administrative action in the issuance of permits—to find that date upon which the substantial change of position is made which finally vests the right. The more practical rule to administer, we feel, is that *the right vests when the party, property owner or not, applies for his building permit, if that permit is thereafter issued. This rule, of course, assumes that the permit applied for and granted be consistent with the zoning ordinances and building codes in force at the time of application for the permit.*

(Italics ours.)

A careful examination of the record shows substantial—indeed overwhelming—evidence to support the finding of

the trial court that the September 1976 application was believed by the responsible city officials to be in compliance with existing codes, ordinances and procedures and that this belief was communicated by these officials to Mercer prior to, at the time of, and subsequent to the permit application.

Furthermore, our independent review of the City's procedures, the requirements of ordinance No. 3210, and the permit application convinces us the September 1976 application was consistent with existing law.

Ordinance No. 3210 requires a site plan to be submitted to the Bremerton Planning Department upon application for a building permit in R–1 districts. The site plan binds the property to the form of development shown thereon. It is subject to removal or modification only upon application and approval of the Planning Commission and the City Council of the City of Bremerton.

Throughout all the negotiations between Mercer and the City, the 49–acre project was considered as a complete whole. The only reference to construction phases was contained in the building permit application. The site plan was submitted to the Planning Department at the same time as the building permit application was submitted to the Building Department. The Planning Department circulated both documents to other departments, requesting comments and conditions to be attached to approval of the project. Under these circumstances, it is only appropriate that we view the proposed development in a similar context.

*Hull v. Hunt, supra,* does not detail what specific information must be included in the application; only that what is contained in the application be consistent with the codes and ordinances then in force. While it may be that in other situations a different type of application would be required by a city ordinance, here the requirements of the ordinance were met.

The trial court also found—and its finding is unchallenged by the Kitsap Lake Environmental Association—

that the approach taken by Mercer in its application and the action taken by the Building Department was "a reasonable approach to be taken in [the] situation" and that "for some period of time the City was concurring in this approach, the Building Department particularly, and for good reason." *See Richland Homeowner's Preservation Ass'n v. Young,* 18 Wn. App. 405, 414, 568 P.2d 818 (1977).

No intimation was given to Mercer that this approach was not to be accepted by the City until a letter dated December 29, 1976, from the Bremerton Planning Director was received by Mercer. It stated:

> This is to inform you that the proposed development on the Bruce Harlow property cannot be approved for a permit until such time as the multifamily portion of the proposal is redesigned to accommodate 9 units per acre rather than the 408 units (12.6 du/a). *Although your original proposal conforms to the letter of the law,* it is the opinion of many people, including Planning Commission members and City Councilmen, that it was the intent of the ordinance, as it applies to your proposal, that the 9 units per acre provision means that the entire area be apartments with common open space. Therefore, the lots along the water proposed for single family residences do not fit this intent and must be considered as separate property.

(Italics ours.) Mercer responded on January 6, 1977, by modifying the site plan so as to include only 276 multifamily units on the 30–acre tract.

Kitsap Lake Environmental Association contends our holding in *Mercer Island v. Kaltenbach,* 60 Wn.2d 105, 371 P.2d 1009 (1962), makes irrelevant the question of the reasonableness of the procedures adopted by the City and the assurances that the application would meet the requirements of the applicable ordinances. In *Kaltenbach,* the property owner received a permit to construct "a residence and private conservatory." Subsequent to construction, the building was turned into an establishment wherein instruction in music, dancing and other arts was given to members

of the public as a commercial enterprise. Kaltenbach contended that assurances had been given by county officials that the permit authorized such a use. We said:

> The ultimate question is whether the use is authorized by the ordinance, and this must be determined as a matter of law by the courts and not by informal opinions of county administrative officials.

*Kaltenbach,* at 107. *Kaltenbach* and this case are not in conflict. In the former, the question was the type of use allegedly approved by the local officials; here we are concerned with assurances given by City officials as to the appropriateness and validity of procedures to be used in a permit application—a far different matter. No formal processing procedures had been adopted by the City and Mercer had no choice other than to rely on the assurances from City officials. *See Richland Homeowner's Preservation Ass'n v. Young, supra.*

The intervenors next assert *Eastlake Community Council v. Roanoke Assocs., Inc.,* 82 Wn.2d 475, 513 P.2d 36, 76 A.L.R.3d 360 (1973), controls. It does not. In *Eastlake,* the trial court found the building permit was issued contrary to the provisions of the Seattle building code. We specifically did not decide whether the application was also defective or if a defective application could be cured prior to the issuance of the permit. Here, we agree with the trial court that the September 3, 1976, permit application was valid, even if it did require some further information to complete the processing before a permit could be issued. Cases subsequent to *Eastlake* have spoken to this situation. *Parkridge v. Seattle,* 89 Wn.2d 454, 573 P.2d 359 (1978); *Richland Homeowner's Preservation Ass'n v. Young, supra.*

In *Parkridge,* following the permit application, which was consistent with the ordinances then in effect, a number of changes were made and incorporated in revised drawings following discussions between Parkridge and city officials. Further detailed plans were ready to be forwarded to the City but the City canceled the permit application prior to delivery. We upheld the finding of the trial court that

Parkridge had been diligent in its efforts to obtain a permit; that the City had frustrated those efforts; and that the City should be required to process the Parkridge building permit application "promptly, diligently and in good faith". *Parkridge,* at 466.

Here the unchallenged finding is that Mercer acted in good faith and with diligence and that its efforts were frustrated by the City. Since the initial application was in conformity with existing ordinances, since the procedures followed by Mercer were consonant with the instructions of the City, and since Mercer diligently and in good faith cooperated with the City to meet any requirements following its application, it cannot now be successfully argued that the failure of Mercer to supply information will defeat its vested rights under the doctrine of *Hull v. Hunt, supra.*

The City required Mercer to commit itself in advance to a particular size, density and concept. Just as the City was entitled to rely on the representations made by Mercer in the site plan, so Mercer acquired a vested right to build its project according to the plan as long as it complied with zoning ordinances at the time it applied for the building permit.

The trial court is affirmed.

WRIGHT, HOROWITZ, and HICKS, JJ., and HAMILTON, J. Pro Tem., concur.

UTTER, C.J. (dissenting)—For two and a half decades, we have adhered to a vested rights doctrine that ensures "certainty in the date of vesting of rights." *Eastlake Community Council v. Roanoke Assocs., Inc.,* 82 Wn.2d 475, 484, 513 P.2d 36, 76 A.L.R.3d 360 (1973); *State ex rel. Ogden v. Bellevue,* 45 Wn.2d 492, 275 P.2d 899 (1954). In adopting our fixed rule, we explained that we were rejecting the flexible rules of other states in order to set a clearly recognizable point at which a developer's rights will vest. *Hull v. Hunt,* 53 Wn.2d 125, 129–30, 331 P.2d 856 (1958). The majority opinion throws us back into the uncertainty that

existed before our present doctrine, with none of the benefits of either the fixed or flexible rules.

Under Washington law, a vested right to develop land in accordance with the prevailing zoning ordinance accrues at the time of application for a building permit if the application fully complies with the requirements of the ordinance. *State ex rel. Craven v. Tacoma*, 63 Wn.2d 23, 27–28, 385 P.2d 372 (1963); *State ex rel. Ogden v. Bellevue, supra.* Accordingly, when a zoning ordinance is repealed or revised, a developer will have the right to build in accordance with the former ordinance if: (1) The developer applied for the building permit before the ordinance was changed; and (2) The application for the permit fully satisfied all of the requirements of the former ordinance. *State ex rel. Craven v. Tacoma, supra* at 27–28; *State ex rel. Ogden v. Bellevue, supra* at 496. Where the building permit was already issued to the developer before the ordinance was changed, it also must be shown that the permit issued conformed to the then–existing zoning ordinance and building regulations. *Eastlake Community Council v. Roanoke Assocs., Inc., supra* at 481; *Hull v. Hunt*, 53 Wn.2d 125, 130, 331 P.2d 856 (1958). In the rare case in which city officials explicitly frustrate the developer's diligent efforts to complete the permit application, the developer may nevertheless have a vested right despite his failure to meet all of the requirements of the former zoning ordinance. *Parkridge v. Seattle*, 89 Wn.2d 454, 465–66, 573 P.2d 359 (1978).

The Kitsap Lake Environmental Association contends that Mercer Enterprises does not have a vested right to build in accordance with former Bremerton ordinance No. 3210 because Mercer's applications for a building permit did not satisfy the density requirements set by the ordinance. The Bremerton ordinance established a maximum density requirement of 9 dwelling units per acre. The record shows that in its applications, Mercer applied for a building permit for Phase 1 of the project (with an average density of 11.78 units per acre) and submitted a site plan

showing that the entire 3-phase development would have an overall average density of approximately 9 units per acre.

The question of whether Mercer's application complied with density requirements thus depends on whether one examines solely Phase 1 which exceeded the permissible density, or looks at the entire project which would upon completion have a satisfactory overall average density. The majority finds that it is proper to consider the density of the 3-phase development as a whole. They believe this because the site plan for the whole project was submitted along with the application for a building permit for Phase 1 land; "[t]hroughout all the negotiations between Mercer and the City, the 49-acre project was considered as a complete whole"; and "[t]he only reference to construction phases was contained in the building permit application." Majority opinion at page 628. However, in vested rights cases, the building permit application is the central factor, and the developer's rights are determined by what he actually applied for in his building permit application. *See, e.g., Pierce v. King County,* 62 Wn.2d 324, 335-36, 382 P.2d 628 (1963) (explaining that a developer's right to build cannot vest until he applies for a building permit for the property); *see also, e.g., Hass v. Kirkland,* 78 Wn.2d 929, 481 P.2d 9 (1971) (developer could not claim vested rights as of March 1966, even though he had corresponded with City about his plans, because he had not actually applied for a building permit to carry out those plans); *Ford v. Bellingham–Whatcom County Dist. Bd. of Health,* 16 Wn. App. 709, 714-15, 558 P.2d 821, 826 (1977) (vested rights doctrine cannot apply until developer actually makes a valid application for the building permit). The building permit application is the focal point because the Washington vested rights doctrine is predicated on the ability to determine with certainty what the developer has applied for and what specific rights have accrued as a result. *See Hull v. Hunt, supra* at 130. In vested rights cases in which a building permit was already issued before the ordinance change, the

certainty is established by examining the property for which the permit was issued. *See, e.g, Hull v. Hunt, supra* at 130–31. In vested rights cases in which a permit was not issued before the zoning change, the certainty is established by only looking at the property for which the developer actually applied in his permit application. *See, e.g., State ex rel. Ogden v. Bellevue, supra* at 495–96.

In the present case, the record shows that Mercer Enterprises applied for a building permit only for Phase 1 of the project. The original September application stated unambiguously that it was seeking a building permit only for Phase 1. The January and March applications revised the overall site plan and the Phase 1 plot plan, but did not request building permits for the rest of the project. Moreover, Mercer's architect–engineer, the person who applied for the building permit and submitted the site plan, acknowledged that if his building permit for Phase 1 had been approved, he would have sought building permits for Phases 2 and 3 at some point in the future.

Accordingly, in determining the rights of Mercer Enterprises, we must consider only the density of Phase 1. Since the 11.78 units per acre density of Phase 1 exceeded the density requirements of the ordinance, Mercer did not acquire vested rights.

There is an additional reason for finding that Mercer does not have vested rights. In order to gain vested rights, the developer's application for a building permit must comply with the applicable building code as well as the applicable zoning ordinance. *Eastlake Community Council v. Roanoke Assocs., Inc.,* 82 Wn.2d 475, 479, 481–84, 513 P.2d 36, 76 A.L.R.3d 360 (1973). The building code in this case provides that an application for a building permit must contain plans and specifications which

> shall be of sufficient clarity to indicate the nature and extent of the work proposed and show in detail that it will conform to the provisions of this Code and all relevant laws, ordinances, rules, and regulations.

Bremerton Building Code § 301(d). The record shows and the trial court expressly found that Mercer did not submit "storm and sewer plans, plumbing and electrical plans, foundation investigations, and water service plans necessary before issuance of a final permit." At trial, the Bremerton building official testified that the storm, sewer, foundation, and water plans were essential prerequisites for issuance of a building permit and that he could not have granted a permit to Mercer Enterprises on the basis of its applications.

The applications for the building permit therefore did not satisfy all of the requirements established by the applicable building code. The majority concludes, however, that the application was nevertheless sufficient to vest rights "even if it did require some further information to complete the processing before a permit could be issued." Majority opinion at page 630. Citing *Parkridge v. Seattle, supra,* and *Richland Homeowner's Preservation Ass'n v. Young,* 18 Wn. App. 405, 568 P.2d 818 (1977), the majority indicates that a developer can acquire a vested right on the basis of an insufficient application and thereafter retroactively satisfy the remaining requirements for a full application. Majority opinion at pages 630–31. Neither *Parkridge* nor *Young* supports such a holding in the present case. In *Parkridge,* the court permitted retroactive completion of some of the requirements for a building permit application, but only because the evidence showed that the City had explicitly frustrated the developer's diligent efforts to fulfill these requirements. The developer in *Parkridge* submitted an application for a building permit that contained the required schematic drawings and "'was consistent with the [then–existing] ordinances.'" *Parkridge,* at page 465. In the following months, the City repeatedly delayed its consideration of the application and continually set new requirements for the developer to meet in order to complete the application. While the developer was attempting to meet these new requirements, the City rejected the application

on the basis of a newly enacted ordinance. *Parkridge,* at pages 465–66.

The record in the present case does not show comparable City frustration or comparable developer diligence. On December 15, 1976, the Bremerton building official sent a letter to Mercer Enterprises stating that its application lacked sewer, storm drainage, and water service plans, and that this information must be submitted before a permit could be considered. Yet, in its January 1977 and March 1977 applications, Mercer did not supply this information.

The decision of the Court of Appeals in *Young* also does not support the granting of vested rights in this case on the basis of an incomplete application which will be retroactively cured on a subsequent date. The *Young* case did not involve a vested rights claim at all and involved, rather, a claim that the City had improperly issued a building permit on the basis of an incomplete application. Although the court held in *Young* that the City could issue the building permit contingent upon certain retroactive corrections of the application, the court did not address the question of whether the incomplete application was sufficient to vest rights in the developer. *See Young,* at pages 416–18. In vested rights cases in which a permit has already been issued, the reviewing court must determine not only that the permit was correctly issued, but also that the application was sufficiently complete to vest rights. *See, e.g., Eastlake Community Council v. Roanoke Assocs., Inc., supra* at 481.

Thus, neither *Parkridge* nor *Young* authorizes retroactive completion of the building permit application in this case. In the absence of the extreme circumstances that existed in the *Parkridge* case, an application for a building permit cannot vest rights unless it is complete at the time of application. *See, e.g., State ex rel. Craven v. Tacoma,* 63 Wn.2d 23, 27–28, 385 P.2d 372 (1963). The complete application requirement is necessary in order to establish with certainty the developer's right to build under the former ordinance and also in order to preclude speculation in

building permits. "[T]he cost of preparing plans and meeting the requirements of building codes is such that good faith application can be assumed." *Eastlake Community Council v. Roanoke Assocs., Inc., supra* at 484. The requirement of complete compliance at the time of application should be applied in this case, and vested rights accordingly denied for failure to comply with building code requirements.

The majority emphasizes that the City indicated approval in its December 29, 1976, letter and that Mercer acted reasonably on the basis of the City's assurances. Although these are factors in determining vested rights in other jurisdictions, *See* Annot., *Retroactive Effect of Zoning Regulation, In Absence of Saving Clause, on Pending Application for Building Permit,* 50 A.L.R.3d 596 (1973), the Washington rule was designed to eliminate examination of the "'moves and countermoves of . . . parties'". *Hull v. Hunt,* 53 Wn.2d 125, 130, 331 P.2d 856 (1958). Under our doctrine, vested rights are determined solely by the developer's compliance with the then–existing ordinances and building regulations.

Since the application in this case did not comply with the zoning ordinance and the building code, the developer did not acquire vested rights. The trial court ruling should be reversed.

ROSELLINI, BRACHTENBACH, and WILLIAMS, JJ., concur with UTTER, C.J.