Jimmie LAUGHLIN, Appellant,

v.

Douglas EVERHART, Appellee.

Allen DEMOSKI, Cross-Appellant,

v.

Jimmie LAUGHLIN, Cross-Appellee.

Nos. 7360, 7453.

Supreme Court of Alaska.

Feb. 10, 1984.

Gary W. Vancil, Fairbanks, for appellant Laughlin.

Lyle R. Carlson, Fairbanks, for appellee Everhart and cross-appellant Demoski.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MATTHEWS, Justice.

In this case appellant Laughlin .contends that a road, called by the parties Tribulation Trail, is public or, alternatively, that he has acquired an easement to it. Laughlin is the owner of 141.16 acres of land located near Rosie Creek Road, a public highway in the Fairbanks North Star Borough. Laughlin purchased this property in 1965 from a third party. When Laughlin bought his land it was separated from Rosie Creek Road by two parcels. The parcel nearest Rosie Creek Road does not concern this case as the parties have, for the purposes of this case, treated that part of Tribulation Trail which crosses this property as a public road. The other parcel was a homestead entry in the name of John Teas. Teas acquired patent to his homestead in 1968.

In 1965 Tribulation Trail ran from Rosie Creek Road to Teas' homesite, but not to Laughlin's property.[1] Teas also had access from his homesite to Rosie Creek Road by means of another road, referred to by the parties as the lower road. Laughlin and Teas allege that this alternate access road is impassable much of the time. In 1971 Teas deeded the eastern half of his homestead to Skelton and reserved access across the lower road. Later in 1971 and 1972 Teas sold 10 acre parcels to Demoski, Everhart, Schoen, and Presnell. In 1975 Teas sold a 35 acre parcel to New and his homesite parcel to Quist. Tribulation Trail crossed all these parcels, except Skelton's. In 1976 Demoski subdivided his land into four equal parcels. That same year Douglas Everhart and his wife Jeannie divided their property into four equal pieces of property, two owned by Jeannie and two owned by Douglas. Neither Teas, nor Demoski, nor the Everharts recorded an approved subdivision plat prior to the conveyances which they made. In 1979 Laughlin, by agreement with New, built a road connecting Laughlin's property with Tribulation Trail.

1. Teas did give Laughlin permission to use Tribulation Trail and to store belongings at Teas' homesite.

In 1981 Laughlin sued Demoski and Everhart. He sought, among other things, a declaration that Tribulation Trail was a public road, or alternatively, a declaration of an easement along Tribulation Trail as it crossed defendants' property. Laughlin moved for summary judgment. The defendants opposed the motion and suggested that, if anything, they were entitled to summary judgment. The court agreed, and on July 2, 1982 published a memorandum decision granting summary judgment to defendants.[2] Laughlin sought reconsideration based on a theory, among others, that since Demoski and Everhart had subdivided their property without complying with applicable subdivision requirements,

2. Such action is authorized under Civil Rule 56(c) which provides that "[s]ummary judgment, when appropriate, may be rendered against the moving party."

they should be estopped to deny that Tribulation Trail as it crossed their property was public. Laughlin argued that if they had complied with the subdivision requirements they would have been forced to dedicate that portion of Tribulation Trail which crossed their property as a public road. The court accepted this theory as to Demoski but not as to Everhart. Judgment was entered in favor of Laughlin against Demoski, and in favor of Everhart against Laughlin. Both losing parties have appealed.

3. *Approval and recording of subdivisions.* Before the lots or tracts of any subdivision or dedication may be sold or offered for sale, the subdivision or dedication shall be submitted for approval to the authority having jurisdiction, as prescribed in this chapter. The regular approval of the authority shall be shown on it or attached to it and the subdivision or dedication shall be filed for record in the office of the recorder. The recorder shall not accept a subdivision or dedication for filing unless it shows this approval. If no platting authority exists as provided in §§ 70–130 of this chapter, lands may be sold without approval.

4. *Jurisdiction.* A. This title shall control all land subdivision or dedications for purposes of sale or building development within the Fairbanks North Star Borough. Variations or additional subdivision regulations applicable to areas within cities, special service areas, and zoned areas outside of cities are covered separately under individual chapters on zoning regulations for such local divisions of government.

B. All lands within the borough which are to be divided shall be shown on a plat and approved by the Fairbanks North Star Borough planning commission, and filed in the district recorder's office prior to selling or offering to sell any portion of such divided land, except as follows:

1. A waiver of these regulations may be granted by the commission for disposal of a portion of a tract of land when the transaction does not fall within the general intent of these regulations, and where no dedication of a street or other public area is involved or required.

2. Requirements for subdivision of tracts of land into ten acre aliquot section parts or multiples thereof shall meet all applicable requirements for subdivision herein.

3. Requirements for subdivision of tracts of land into non-aliquot section parts regardless of size, and aliquot section parts of less than ten acres each or multiples thereof, for purposes of sale or building development, shall meet all applicable requirements for subdivisions herein, except that the commission may grant waivers

I.

[■] Laughlin's primary point on appeal is that the trial court should have used the same theory it used as to Demoski's act of illegal subdivision with respect to the illegal transfers made by Teas. AS 40.15.010 [3] and Fairbanks North Star Borough Code of Ordinances (hereafter FNSB) § 17.04.030 [4] require submission, approval, and recording of a plat before a property owner can divide and sell his property or any portion thereof. FNSB § 17.16.040 [5] sets forth certain requirements for approv-

for this paragraph as prescribed in paragraph 1 of this section.

4. Existing lots of a platted, recorded subdivision may be split or combined under a waiver which may be granted by the commission upon submission of an accurate sketch drawn to scale and legal description of such lot-split or combination of lots.

5. Requests for waiver of subdivision regulations should be addressed to the Fairbanks North Star Borough planning commission, and should be accompanied by an accurate sketch drawn to scale, which shows the original unsubdivided tract of land and a delineation of the portion or portions to be separated and sold, and should include the parcel description which is to be used for the title conveyance.

5. *Required improvements.* A. Prior to approval of the final plat, the subdivider shall satisfy the commission regarding completion of, or satisfactory arrangements for completion of, minimum required street improvements which shall consist of construction of an access road or roads to serve all lots of the subdivision. Such access road or roads shall be constructed with a minimum of eighteen-foot-wide by six-inch-thick gravel surface laid upon properly compacted subbase built up to an elevation sufficient to insure a driveable surface for easy two-way traffic during the spring breakup and other periods of adverse wet surface conditions. Approved culvert facilities and drainage control properly installed shall be considered an integral and indispensable part of the minimum required street improvements. Street name signs shall be placed at all intersections. Street signs shall be standard metal reflective signs and shall be of size prescribed and placed in accordance with standards adopted by the planning commission. With prior approval of the planning commission, a subdivider may be permitted to use a wooden sign for artistic or esthetic reasons provided that the same degree of permanence and visibility can be achieved.

B. Final plat of any new subdivision located within an incorporated city or a special service area shall not be approved unless the subdivider

al, including the provision of access roads. AS 40.15.030 [6] provides that all platted roads are deemed to have been dedicated to the public.

Both the state statutes and the local ordinances prescribe remedies for violation. AS 29.33.190 [7] makes noncompliance a misdemeanor punishable by up to a $500 fine for each lot sold. The platting authority is also given power to enjoin transfers. FNSB § 17.36.010 [8] allows anyone to file a complaint with the planning officer, who must investigate and take appropriate action within thirty days. FNSB § 17.36.-020 [9] also provides for a $500 penalty for each lot transferred and permits the Borough to obtain an injunction preventing a transfer.

Laughlin bases his argument primarily on the equitable maxim that "equity re-quires to be done that which should have been done." With respect to the subdivision of Teas' property, we do not believe that the remedy advocated by Laughlin is appropriate.

First, it is speculative as to what access would have been required if Teas had submitted a plat for approval to the platting authority. It is possible, for example, that dedicated access in a location different than the roadway occupied by Tribulation Trail would have been required.

Second, the remedy of enforced dedication of Tribulation Trail, or any other access, goes well beyond the remedies provided which are, as previously noted, a maximum fine of $500 for each sale and injunction of each sale. In *Price v. S.S. Fuller, Inc.*, 639 P.2d 1003, 1004–1005 (Alaska

has an agreement with such city or service area providing for installations of all required improvements and evidence of such agreement has been filed with the commission.

C. Completion of minimum required street improvements shall be evidenced by a certificate to be issued by the borough engineer stating that all improvements have been installed in accordance with requirements of this section. In lieu of completion, the subdivider may post with the commission a certified check or bond running to the Fairbanks North Star Borough in an amount sufficient to cover the cost of completing the required improvements. In case a bond is posted it shall be with surety satisfactory to the commission, and a satisfactory date for completion of the improvements shall be stated in such bond.

6. *Dedication of streets, alleys and thoroughfares.* When an area is subdivided and a plat of the subdivision is approved and recorded, all streets, alleys, thoroughfares, parks and other public areas shown on the plat are deemed to have been dedicated to public use.

7. *Penalties.* (a) The owner or agent of the owner of land located within a subdivision who transfers, sells, or enters into a contract to sell land in a subdivision before a plat of the subdivision has been prepared, approved, and recorded, is guilty of a misdemeanor and upon conviction is punishable by a fine of not more than $500 for each lot or parcel transferred, sold, or included in a contract to be sold. The borough may enjoin a transfer, sale, or contract to sell, and may recover the penalty by appropriate legal action.

(b) No person may record a plat or seek to have a plat recorded unless it bears the approval of the platting board. A person who knowingly violates this requirement is punishable upon conviction by a fine of not more than $500.

8. *Complaint of violations.* A complaint of a violation of this chapter shall be filed in writing with the planning officer. When such complaint is filed, the planning officer shall, within reasonable time, not to exceed thirty days, investigate, take appropriate action, and file a report with the borough mayor.

9. *Penalty for violations.* A. The owner, or his agent, of land located within a subdivision who transfers, sells, or agrees or enters into a contract to sell land in the subdivision before a plat of the subdivision has been prepared, approved, and recorded in compliance with this chapter and the subdivision regulations adopted under this chapter, is subject to a civil penalty of five hundred dollars for each lot or parcel transferred or sold as agreed or included in a contract to be sold. Upon a showing that a violation has occurred or is threatened, the borough may obtain an injunction preventing a transfer or sale or agreement to sell, and may, at the same time, recover the penalty by appropriate legal action. As used in this section, a contract to sell land does not include an option or other contract to purchase if such contract is absolutely contingent upon platting board approval.

B. No person may file or record a plat of subdivisions in any public office unless the plat bears the approval of the commission. Any person who files or records a plat in violation of this requirement upon conviction is punishable by a fine of not more than five hundred dollars, or by imprisonment for not more than six months, or by both.

1982) we noted the existence of these two remedies and declined the invitation to hold that a third remedy, that of unenforceability of a transfer of unplatted land, should be implied. We take a similar approach here. Decreeing that Tribulation Trail should be considered a dedicated road because Teas had not complied with applicable subdivision requirements would be tantamount to taking property from Teas' transferees. While such a taking would not necessarily be unconstitutional,[10] such a remedy differs so substantially from those which are statutorily provided as to preclude judicial implication.[11]

With respect to the subdivision of Demoski's property, it is by no means clear that the platting authority would have required that Tribulation Trail as it crosses Demoski's property be dedicated as a public road, since doing so would not provide access to all four parcels created in Demoski's subdivision. Indeed, the record indicates that the Borough was aware of Demoski's subdivision and declined to take action because it believed that sufficient access to the lots was provided.[12] Thus the remedy imposed by the trial court is not necessarily similar to what would have taken place had Demo-

ski complied with the subdivision requirements. Further, the remedy differs significantly from that which is statutorily prescribed. We conclude, therefore, that the court erred in holding that Tribulation Trail should be considered as a public road where it crosses Demoski's land because of Demoski's failure to comply with the subdivision requirements.

Appellant's argument as to Everhart is the same as that which pertains to Demoski. The trial court found, however, that the Everhart parcel should be treated differently because the Everhart land was not subdivided for the purpose of sale, a requirement of AS 29.78.010(16). We need not consider whether this conclusion was correct. For the reasons expressed above concerning the Demoski parcel, it would not have been appropriate for the court to have declared the section of Tribulation Trail crossing the Everhart property to be a public road.[13]

## II.

Laughlin's next point on appeal is that New, who purchased 35 acres from Teas in 1975, has a right of access across the land

**10.** In several states the municipality or the purchaser is conferred the right to rescind a sale accomplished in violation of platting requirements. *See* Rathkopf, *The Law of Zoning and Planning* § 71–13, at 71–125 (4th ed. 1971).

**11.** The Supreme Court of Washington stated in *State ex rel. Craven v. City of Tacoma*, 63 Wash.2d 23, 385 P.2d 372, 374 (1963):

But the statute does not suffer the city to visit the sins of the grantor upon the grantee. Both the provisions for fixing a penalty and granting injunctions in the foregoing statute are directed against the owner of land, or his agent, who transfers or sells it before the plat or map of the subdivision in which it lays has been approved. They are not directed against a bona fide purchaser....

**12.** On February 1, 1976, the Borough wrote to Demoski requesting that he take immediate steps to comply with the applicable subdivision statutes and ordinances. However, an internal Borough memo dated February 24, 1976 stated the following concerning the Demoski subdivision:

Ten acre parcel divided into four 2½ parcels. All lots have legal access. Meets AS 29.33.220

and FNSB 49.10.200. No further action to be taken.

In an amicus curia memorandum before the superior court in this case, the Borough characterized this memo as akin to an exercise in prosecutorial discretion not to prosecute a violation. It further stated that, as the planning commission then interpreted applicable requirements, a waiver of requirements with respect to Demoski's subdivision would have been approved "as a matter of course."

**13.** Although we decline to imply the remedy which Laughlin proposes, this does not mean he is without any conceivable recourse. Clearly the Borough could seek to enjoin any party who knowingly failed to comply with subdivision laws from making further sales. *Vogler v. Fairbanks North Star Borough*, 635 P.2d 462, 463–464 (Alaska 1981). Laughlin arguably could also seek such an injunction since he is an owner of nearby property which is affected by the subdivisions in question. *Renard v. Dade County*, 261 So.2d 832, 837 (Fla.1972); *Reynolds v. Dittmer*, 312 N.W.2d 75, 78 (Iowa App.1981); *Douglaston Civic Association, Inc. v. Galvin*, 36, N.Y.2d 1, 364 N.Y.S.2d 830, 834–835, 836, 324 N.E.2d 317, 320–21 (1974).

of Demoski and Everhart on Tribulation Trail appropriate for subdivision development of New's land. Such right of access, the argument goes, is necessarily a public one; and since New has granted Laughlin access to New's land, Laughlin is in a position to assume the same rights as those running to New.

■ The trial court's decision on this point was as follows:

> Another argument offered by plaintiff is based on the assertion that Ralph New, whose land lies just north of plaintiff's, hopes to subdivide his land. The difficulty with this argument is that New has not yet subdivided, and a public way is not automatically created by his desire to subdivide. Public access is a prerequisite to lawful subdivision; if New is unable to obtain an access route, he will be unable to proceed with his subdivision. The hope or speculation that New will subdivide in the future cannot give plaintiff any rights against Demoski or Everhart.

The court also recognized that New may well have an implied easement across the lands of Demoski and Everhart:

> An easement may be created by implication when a landowner who has used a roadway over one portion of his land to provide access to another portion conveys one of those portions to a grantee. If the portion containing the road, the "quasi-servient" parcel, is sold, the landowner may be deemed to have reserved an easement along the road to reach his retained land if use of the easement is reasonably necessary for access to the retained land. *Freightways Terminal Co. v. Industrial Indemnity Co.,* 381 P.2d 977 (Alaska 1963). The easement would be appurtenant to and run with the retained lands of the grantor, so that successive owners of the retained portion would have the right to use the easement.
>
> Applying the above law, it seems quite possible that Quist and New, the Teas grantees whose parcels contain the southern end of the upper road, have an

implied easement across defendants' land. Plaintiff, however, is not a successor of Teas; the benefit of the easement, if it exists, cannot run to his land.

■ We can find no fault with the court's reasoning on this point. While New, as the owner of the original dominant tenement, may be the holder of an implied easement which is apportionable upon his subdivision of the original dominant tenement, traditional property law holds that the apportionment is limited to those subdivided parcels which were originally part of the dominant tenement:

> Easements appurtenant are readily apportionable upon a subdivision of the original dominant tenement. This means that each part of the dominant tenement is entitled to claim the benefit of the easement for the service of his special segment. Some increase in burden can result from the increase in the number of users, but such increase in burden is kept within limits by the fact that any easement appurtenant has its total extent defined by the needs of the dominant estate.

3 R. Powell, *The Law of Real Property* § 418, at 34–218 (Rohan rev. ed. 1979) Thus New, assuming that he is the holder of an access right across the defendants' property, cannot convey it to one not the owner of a part of the original dominant tenement.

### III.

■ Laughlin's final point on appeal is that there was a question of fact as to what Teas told Everhart and Demoski when he sold to them. Teas submitted affidavits claiming that he told defendants that "the owner of each parcel of what was my original homestead was to have a right of ingress and egress over Tribulation Trail to the Rosie Creek Road." The defendants, on the other hand, claimed that they specifically asked Teas if he would like an easement across the property he was selling them and he declined. Taking Teas at

full value, however, Laughlin's cause is not aided, for the most that could have been created thereby was an easement in favor of the remainder of Teas' homestead.

For these reasons the judgment of the superior court as to the Everhart property is affirmed and the judgment as to the Demoski property is reversed.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.