[No. 25378-3-III.  Division Three.  August 10, 2010.]

JEFF KELLY ET AL., *Respondents*, v. CHELAN COUNTY, *Defendant*, ROBERT CULP ET AL., *Appellants*.

418

*Chancey C. Crowell*, for appellants.

*Brian E. Lawler* (of *Lawler Burroughs & Baker PC*), for respondents.

¶1 SWEENEY, J. — This is a land use case. In 1989, a developer applied for a conditional use permit to develop waterfront property on Lake Chelan, Washington. The proposed development did not comply, and has never complied, with Chelan County zoning regulations. The proposed development went through numerous changes between 1989 and the present. A hearing examiner concluded that the developers' rights vested in the zoning regulations in effect in 1994. The trial court concluded that the application was incomplete and, accordingly, concluded that the examiner erred by holding that the developers' rights to this project vested in 1994. We agree and affirm the judgment of the trial court.

## FACTS

¶2 Beginning in 1989, Robert Culp, PE, of Munson Engineers Inc. applied on behalf of Anton Roeckl, doing business as WICO (the Developers), for a conditional use permit to build townhouse condominiums and boat slips on Mr. Roeckl's property on Lake Chelan's southwest side.

¶3 The Developers revised their development plan numerous times between 1989 and June 2005. The original 1989 application was for "recreational beach area, erosion control, and to grade and rip-rap approximately 1000' of water frontage." Administrative Record (AR) Doc. 33, at 12 (Chelan County Suppl. Staff Report CUP 1955). In 1990, the Developers revised the application for a conditional use permit to include a 30-unit townhouse cluster, a seawall, a swimming pool, boat slips, and a beach house. They also proposed to realign a county road and construct a pipe arch pedestrian underpass. The plans also included the originally proposed beach and waterfront improvements.

¶4 In January 1991, the application was again revised. This time it called for 37 residential lots, 38 townhouse units, and the "boat slips" became a 32-boat-slip marina. The application was also divided into two projects: one for the residential lots and one for the townhouse units and waterfront improvements. The permit application for the townhouse units and waterfront improvements is the subject of this appeal. In March 1991, that application was again revised to include 50 townhouse units (instead of 38), and a grocery and hardware store were added to the other improvements. In 1994, the application proposed 78 townhouses and two waterfront residential units, an 88-boat slip marina, a grocery and hardware store, and a seawall. The application also proposed to realign a county road and to construct a pedestrian underpass. The complete development was to be situated on 10 acres.

¶5 In 1998, the Developers' application changed again. This time it eliminated the waterfront residential units and

the grocery and hardware store. It eliminated plans to realign the county road and to install a pedestrian underpass. It reduced the 88-boat-slip marina to 80 slips. And it introduced and incorporated into the proposal bioengineered stream bank protection instead of a seawall.

¶6 The Chelan County Planning Department opened this latest application to public comment in 2001. A county hearing examiner then held a public hearing on the application in February 2002. The hearing examiner determined that the State Environmental Policy Act (SEPA), chapter 43.21C RCW, review process was incomplete and referred the application back to the planning department to finalize that process. He specifically declined to decide whether and when the application vested:

> The Hearing Examiner is not making any Finding at this time as to whether or not the current application submitted on November 6, 1998, is complete and/or consistent with applicable Land Use Laws and Regulations.

AR Doc. 136, at 6 (Findings of Fact, Conclusion, and Decision Mar. 8, 2002).

¶7 In March 2003, the application changed again. This time the Developers proposed a separate floating breakwater and swim float, along with three sets of stairs through the bioengineered stream bank to accommodate a swimming area for condominium owners. The Chelan County Planning Department advised the Developers that the revision constituted a substantial change to the original application. The Developers then submitted another revised application in May 2003 that eliminated the proposed changes.

¶8 In June 2003, the Chelan County Planning Department again opened the Developers' revised application to public review and comment. Jeff Kelly and David and Nancy Dorsey (Neighbors) own property near the proposed development. They wrote to the county and objected to the Developers' application.

¶9 The hearing examiner then held a public hearing on the revised application on July 29, 2005. By 2005, the

Developers proposed to build 2 waterfront single-family residences, 78 townhouse units, 80 boat slips, and a seawall, all on a 23-acre site. The Neighbors attended the public hearing and objected to the application.

¶10 The examiner concluded that the Developers' rights vested in laws and regulations in effect in 1994 instead of laws and regulations that took effect in 2000. In 2000, Chelan County revised its zoning regulations and comprehensive plan and rezoned and designated the Developers' property as "rural residential/resource 10" and "rural waterfront." Clerk's Papers (CP) at 168. The comprehensive plan and zoning regulations of 2000 permitted only one dwelling unit per 10 acres on the Developers' property. Chelan County Comprehensive Plan RU-14, RU-18 (2000); Chelan County Resolution No. 2000-129, at 39, 41.

¶11 Before 2000, the county's comprehensive plan designated the Developers' property as "rural," proscribing a less restrictive one unit per acre. Lower Lake Chelan Basin Comprehensive Plan 54 (1990). Before 2000, the county's code zoned the Developers' property "General Use"; that designation allowed single-family or duplex dwellings and agricultural uses on lots no smaller than 10,000 square feet. Former Chelan County Code (CCC) 11.36.010(1) (1977); former CCC 11.36.030 (1979). The property could also be subdivided outright for these purposes. Former CCC 11.36.010(4). Any other use required a conditional use permit. Former CCC 11.36.020 (1974). The hearing examiner ultimately approved the Developers' application under the pre-2000 regulations and granted them a conditional use permit, conditioned on securing the necessary governmental approvals for the project within two years of the issuance of the permit.

¶12 The Neighbors appealed the hearing examiner's decision to the Chelan County Superior Court. The superior court concluded that the application did not vest before zoning changes on October 17, 2000. The court then reversed the hearing examiner's decision and revoked the Developers' conditional use permit. CP at 126.

¶13 The Developers appealed. We concluded that the permit expired by its own terms because the Developers failed to secure the necessary governmental approvals within two years of the issuance of the conditional use permit, and we dismissed the appeal as moot. *Kelly v. Chelan County*, 145 Wn. App. 166, 185 P.3d 1224 (2008). The Developers appealed to our state Supreme Court. That court granted review. *Kelly v. Chelan County*, 165 Wn.2d 1019, 203 P.3d 378 (2009). The Supreme Court concluded that the two-year time limit did not apply pending appellate review and so the Developers were not required to seek a stay to preserve their right to appeal. *Kelly v. Chelan County*, 167 Wn.2d 867, 872-73, 224 P.3d 769 (2010). The Supreme Court then reversed our decision and remanded to us for a decision on the merits. *Id.* at 873.

## DISCUSSION

STANDARD OF REVIEW

¶14 We review de novo a superior court's decision to reverse a hearing examiner's land use decision. *Sylvester v. Pierce County*, 148 Wn. App. 813, 822, 201 P.3d 381 (2009). We consider only the record before the hearing examiner and will uphold the examiner's decision here unless the Neighbors show that he erroneously interpreted the law, failed to base findings of fact on substantial evidence, or erroneously applied the law to the facts. *City of University Place v. McGuire*, 144 Wn.2d 640, 647, 30 P.3d 453 (2001); RCW 36.70C.130(1)(b)-(d). Also, the question presented here is, as we will conclude, a question of law, so for that reason also our review is de novo. *McGuire*, 144 Wn.2d at 647.

VESTED RIGHTS

¶15 The essential question here is whether the Developers' application for a conditional use permit is sufficient to invoke the vested rights doctrine and vest the Developers' rights in the 1994 zoning regulations.

■ ■ ¶16 The "vested rights doctrine" provides that a developer who files a completed land use application that complies with zoning laws and regulations in force at the time of application has a vested right to develop land under those laws and regulations. *Hull v. Hunt*, 53 Wn.2d 125, 130, 331 P.2d 856 (1958); *Weyerhaeuser v. Pierce County*, 95 Wn. App. 883, 890, 976 P.2d 1279 (1999). "Vesting 'fixes' the rules that will govern the land development regardless of later changes in zoning or other land use regulations." *Weyerhaeuser*, 95 Wn. App. at 891. The purpose of the doctrine is to ensure "certainty and predictability in land use regulations." *Abbey Rd. Grp., LLC v. City of Bonney Lake*, 167 Wn.2d 242, 250-51, 218 P.3d 180 (2009).

■ ■ ¶17 The Supreme Court has rejected the distinction between ministerial and discretionary acts in the context of vested rights. *Id.* at 259. The vested rights doctrine is instead based on "[t]he need for a 'date certain' . . . to avoid tactical maneuvering between parties and that need would appear equally strong whether the act is discretionary or ministerial." *Norco Constr., Inc. v. King County*, 97 Wn.2d 680, 684, 649 P.2d 103 (1982). Nonetheless, development rights "vest" because the proposed development meets applicable regulations and all the local government has left to do is issue the necessary permits. *See* Fredrick D. Huebner, Comment, *Washington's Zoning Vested Rights Doctrine*, 57 WASH. L. REV. 139 (1981); *Jones v. Town of Woodway*, 70 Wn.2d 977, 984, 425 P.2d 904 (1967).

¶18 Here, the hearing examiner concluded in 2005 that the Developers' rights vested in April 1994:

> The original application was submitted in March 1989. The application was deemed complete for processing pursuant to the issuance of the MDNS [mitigated determination of nonsignificance] and Mitigation Agreement in April 1994, [and] therefore vested as of this date. This approval is applicable to those application materials, and requested development amenities stipulated in the application materials on file as of April 1994.

CP at 176 (Finding of Fact 50). The finding is troublesome because the hearing examiner concluded that the SEPA process was incomplete in 2002. AR Doc. 136, at 7 (Findings of Fact, Conclusion, and Decision).

■ ¶19 The Neighbors argue the Developers' rights could not have vested in 1994 because the application at that time was incomplete and inconsistent with the development regulations then in force. Resp'ts' Br. at 6-7. In other words, the Neighbors question how the Developers' rights could "vest" in regulations that did not allow their planned improvements in the first place. Again, "right[s] vest[ ] when the party . . . applies for his building permit, if that permit is thereafter issued. This rule, of course, assumes that the permit applied for and granted *be consistent with the zoning ordinances and building codes in force at the time of application* for the permit." *Hull*, 53 Wn.2d at 130 (emphasis added).

Conditional Use Permit

■ ¶20 The problem here is that the grant or denial of a special or conditional use permit is adjudicatory in nature. *See Sunderland Family.Treatment Servs. v. City of Pasco*, 127 Wn.2d 782, 788, 903 P.2d 986 (1995); *Cougar Mountain Assocs. v. King County*, 111 Wn.2d 742, 757, 765 P.2d 264 (1988). That is, the legislative body has discretion to issue the permit or not.

¶21 Washington adheres to the minority rule that an applicant obtains a vested right to develop land when he or she makes a timely and complete building permit application. *Hull*, 53 Wn.2d at 130; *State ex rel. Ogden v. City of Bellevue*, 45 Wn.2d 492, 495, 275 P.2d 899 (1954); *see* Huebner, *supra*, 57 Wash. L. Rev. 139. The rule assumes that the project complies with the applicable zoning and building ordinances in effect on the date of the application. *Abbey Rd. Grp.*, 167 Wn.2d at 266-67; *Erickson & Assocs. v. McLerran*, 123 Wn.2d 864, 870, 872 P.2d 1090 (1994); *Mercer Enters., Inc. v. City of Bremerton*, 93 Wn.2d 624, 627, 611 P.2d 1237 (1980) (quoting *Hull*, 53 Wn.2d at 130). We

turn, then, to the question of whether this project complied with applicable sections of the CCC in 1994. The superior court judge here concluded that it did not.

ZONING REGULATIONS

■ ¶22 Zoning codes regulate the use of property and control the dimensions of improvements placed on property to ensure that adjacent land uses are compatible with one another. *Sammamish Cmty. Council v. City of Bellevue*, 108 Wn. App. 46, 53, 29 P.3d 728 (2001). Zoning codes, then, divide land into various "use districts" and "zones," where certain uses are expressly permitted and, necessarily, others are excluded. 6 WASH. STATE BAR ASS'N, WASHINGTON REAL PROPERTY DESKBOOK § 97.1, at 97-3, § 97.3(1)(c) at 97-10 (3d ed. 1996). Those uses not expressly permitted or prohibited are conditional uses—uses "allowed only when specific and special conditions on use or operation are required." *Id.* § 97.7(2), at 97-27.

¶23 The land here was zoned "General Use" in 1994. At that time, a general use lot could be no smaller than 10,000 square feet. Former CCC 11.36.030. Lots could be used for single-family or duplex dwellings and for agriculture. Former CCC 11.36.010(1)-(2). The property could also be subdivided outright for these purposes. Former CCC 11.36.010(4). Any other use required a conditional use permit. Former CCC 11.36.020. A multifamily dwelling was "a building containing three or more dwelling units." Former CCC 11.08.064 (1964). That is what the Developers proposed here.

■ ¶24 The Developers' 1994 application proposed 78 condos and two single-family residences on 10 acres. It planned to cluster the units into 28 buildings. Zoning ordinances allowed the Developers' application for a conditional use permit unless the development would be injurious to public health, safety, and welfare *or* incompatible with the county's adopted comprehensive plan:

In a [General Use] district the following uses and their accessory uses are permitted when authorized in accordance with Chapter 11.56:

All uses which are not listed as an outright permitted use in Section 11.36.010.

Former CCC 11.36.020 (conditional uses).

Conditional uses shall be denied ... only when ... the proposed conditional use would be injurious to the public health, safety or welfare, or to the area adjoining ... or where ... the proposed conditional use would be incompatible with the adopted comprehensive plan for the area, irrespective of whatever conditions might be imposed.

Former CCC 11.56.020(c) (1978) (authorization for conditional use).

¶25 The CCC allowed only one unit per 10,000 square feet, but the Developers contend that it allowed two units. Appellants' Br. at 22. A "dwelling unit" was "a building or portion thereof designed for occupancy by one family and having only one cooking facility." Former CCC 11.08.076 (1964). The code allowed one- and two-family dwellings. Former CCC 11.36.010(1). It allowed only one building (containing one or two dwelling units) per 10,000 square feet. Former CCC 11.36.010; former CCC 11.08.068, .072 (1964). The Developers' plan for multifamily dwellings did not meet this requirement.

¶26 Nor did the Developers' 1994 application comply with former CCC 11.56.020(c) because the proposed project was incompatible with the applicable comprehensive plan for the area. The county's comprehensive plan in 1994 designated the Developers' property as "rural." Lower Lake Chelan Basin Comprehensive Plan at 54. And it limited "rural" density to one unit per acre. Lower Lake Chelan Basin Comprehensive Plan at 54. The Developers would have had to allocate 80 acres for the proposed 80 units to comply with the comprehensive plan. None of the Developers' applications (from 1989 to 2005) allots more than 23 acres to this proposed development.

¶27 The Developers argue that they are not required to comply with the comprehensive plan. Appellants' Br. at 19. And, generally, specific zoning regulations govern over the

comprehensive plans. *Cougar Mountain*, 111 Wn.2d at 757. But here the zoning regulations specifically required compliance with the comprehensive plan. Former CCC 11.56-.020(c). The Developers' conditional use had to comply with the county's comprehensive plan, irrespective of whatever conditions might have been imposed. Former CCC 11.56-.020; *Hansen v. Chelan County*, 81 Wn. App. 133, 135, 913 P.2d 409 (1996). The proposed development here was not, and is not, compatible with the county's code.

¶28 The Developers' plan of 80 units on 10 acres exceeds the applicable comprehensive plan's proscribed density. Lower Lake Chelan Basin Comprehensive Plan at 54. The Developers' 1994 application was incompatible with the comprehensive plan in effect at the time. The application, then, had to be denied. Former CCC 11.56.020(c). And, for that reason, the Developers' rights could not have vested in 1994.

¶29 The Developers' rights did not vest any time between 1994 and 2000 either. Each version of the plan has been incompatible with the county's zoning code because the plan was never limited to one unit per acre or less. Former CCC 11.56.020(c); *see* CP at 172-73 (summarizing the changes to the Developers' plan between 1993 and 2003).

¶30 We affirm the judgment of the trial court.

KULIK, C.J., and BROWN, J., concur.