[No. 59946-7.    En Banc.    March 17, 1994.]

FRIENDS OF THE LAW, *Appellant*, v. KING COUNTY, ET AL, *Respondents*.

*Jeffrey M. Eustis,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Kevin Wright, Deputy,* for respondents King County, et al.

*Inslee, Best, Doezie & Ryder, P.S.,* by *Richard U. Chapin,* for respondent Anstalt.

DURHAM, J. — This appeal involves the interpretation of RCW 58.17.033, which extended the common law vested rights doctrine to preliminary plat applications. Appellants Friends of the Law (Friends), a nonprofit Washington corporation, claims that respondent Zaria Anstalt's (Anstalt) development rights did not vest because its preliminary plat application failed to conform with all the requirements of the plat application ordinance. It also challenges the authority of the King County Council (Council) to approve an application which does not comply with all applicable zoning, even if it can be made to comply with these requirements. After examining the ordinances in effect at the time the application was submitted, as well as the history and purpose of RCW 58.17.033, we hold that the preliminary plat application in this case did vest upon submission. We also find that the Council acted properly in approving this application.

On December 9, 1988, Anstalt filed an application for preliminary approval with the King County Building and Land Development Division (BALD) to subdivide 65 lots on its 82.3 acres of property.[1] The proposed plat is located north of Redmond and south of Woodinville, in an unincorporated area of King County. The proposed Anstalt plat lies within the Bear Creek planning area, one of 13 such planning areas in King County. The Council has adopted a community plan and area zoning for each of these planning areas. *See* King County Code (KCC) 20.12.

At the time that the Anstalt plat was submitted, the property in question was zoned "G" (General). "G" zoning allows for residential use with a minimum lot size of 35,000 square feet. KCC 21.24.030. The minimum size of a lot within a multi-lot subdivision may vary from this standard. KCC 21.24.030(B); KCC 21.08.080. Also in effect at the time

---

[1]Throughout this recitation of facts, we occasionally refer to details which have been presented by the parties, but which are nonetheless not part of the record certified to this court. Although we are reluctant to depend on the parties' own narratives, there does not appear to be any significant dispute about the facts presented here.

the Anstalt plat was submitted was the Bear Creek Middle Plan. This plan had been "adopted as an addendum to the comprehensive plan for King County, and as an amplification and augmentation of the comprehensive plan, it constitutes official county policy for the Bear Creek planning area". Former KCC 20.12.170; Clerk's Papers (CP), at 215. According to this plan, the Anstalt plat was in an area designated "urban reserve". CP, at 344. This designation carried a maximum allowable density of one house per 5 acres of land.

On December 16, 1988, Anstalt's attorney wrote to BALD to confirm that BALD considered Anstalt's application to have vested as of the date of submittal. On December 19, 1988, the Council adopted ordinance 8801 which temporarily forbade the subdivision of land in the Bear Creek community planning area pending the adoption of an update to that area's community plan. On January 17, 1989, BALD sent a letter to Anstalt stating that its rights were vested as of the date of submittal. On January 30, 1989, the Council enacted ordinance 8846, which adopted the Bear Creek Community Plan and Area Zoning. This changed the zoning for the Anstalt property from "G" to "AR-5" (rural area, with minimum lot size of 5 acres).

Between April 1989 and October 1990, Anstalt submitted five different revisions to its plat application. The final revision specified 69 lots on approximately 94 acres of land. It is undisputed that there were no building setback lines shown on any of these revisions. In August of 1989, BALD issued a "Preliminary Report to the Zoning and Subdivision Examiner" which recommended approval of the Anstalt plat subject to over 20 conditions. Principal hearings on the actual plat application were held between September and October of 1990. Ultimately, the hearing examiner recommended that the plat receive preliminary approval, subject to 27 conditions. The hearing examiner also found that the plat was vested as of the date it had originally been submitted.

Friends, as well as three other parties, appealed this decision to the Council. The Council held a public hearing

on the Anstalt plat on June 17, 1991. The Council essentially concurred with the examiner with the addition of a few new conditions, and granted preliminary approval to the Anstalt plat. There was no modification to the date of the plat's vesting.

On July 17, 1991, Friends appealed the Anstalt plat approval by filing a petition and complaint for writ of review, declaratory judgment, and injunctive relief in the King County Superior Court. Review was granted, but the Superior Court denied the petition and complaint in its entirety. Friends then appealed to this court, and we granted review.

In order to properly understand the statute at issue, it is necessary to understand the concept of "vesting" as it existed at common law. "Vesting" refers generally to the notion that a land use application, under the proper conditions, will be considered only under the land use statutes and ordinances in effect at the time of the application's submission. *West Main Assocs. v. Bellevue*, 106 Wn.2d 47, 50-51, 720 P.2d 782 (1986). The purpose of vesting is to provide a measure of certainty to developers, and to protect their expectations against fluctuating land use policy. *West Main*, at 51. Although the doctrine at common law was extended to a number of different types of permits, it was never extended to applications for preliminary plat approval. *Norco Constr., Inc. v. King Cy.*, 97 Wn.2d 680, 684, 649 P.2d 103 (1982).

In 1987, the Legislature decided to enlarge the vesting doctrine to apply to such subdivision plats. RCW 58.17.033. That statute reads:

> (1) A proposed division of land . . . shall be considered under the subdivision or short subdivision ordinance, and zoning or other land use control ordinances, in effect on the land at the time *a fully completed* application for preliminary plat approval of the subdivision, or short plat approval of the short subdivision, has been submitted to the appropriate county, city, or town official.
>
> (2) The requirements for a fully completed application shall be defined by local ordinance.

(Italics ours.) RCW 58.17.033(1), (2). The gravamen of Friends' complaint is that the application submitted by Anstalt did not qualify as "fully completed" under the King County ordinances in effect at that time, and therefore did not vest to the more permissive "G" zoning. Specifically, Friends contends that the application did not contain building setback lines as required by KCC 19.28.030(C)(4).

■ To begin our analysis, we must clarify the correct standard of review. Review of platting decisions is governed by statute which provides in pertinent part:

> Any decision approving or disapproving any plat shall be reviewable for unlawful, arbitrary, capricious or corrupt action or nonaction by writ of review before the superior court of the county in which such matter is pending.

RCW 58.17.180. While this standard will be applied to judging the Council's discretionary act in approving of the Anstalt plat, this appeal also involves the Council's determination of the meaning of the "fully completed application" doctrine of RCW 58.17.033. This involves a pure question of law and review of the Council's interpretation of the statute will proceed de novo. *See Friends of the Law v. King Cy.*, 63 Wn. App. 650, 656-57, 821 P.2d 539 (1991) (Baker, J., concurring).

Turning to the merits, the statute in question clearly states that "[t]he requirements for a fully completed application *shall be defined by local ordinance*". (Italics ours.) RCW 58.17.033(2). Both sides agree that at the time the application in question was submitted, King County did not have an ordinance specifically defining the requirements for such a "fully completed application" per RCW 58.17.033.[2] The dispute here centers on whether any of the existing King County ordinances were meant to fill this gap.

At the time Anstalt submitted its application, the King County Code contained an ordinance under the heading of "Identification, description and delineation of existing and proposed conditions shown on plat" which purported to

---

[2]The requirements of a completed preliminary plat application are now contained at KCC 19.28.030.

require "[b]uilding setback lines, showing dimensions". Former KCC 19.28.030(C)(4). This requirement has been part of the King County Code since 1948. Friends argues that, under this ordinance, building setback lines had to be included on the preliminary plat application for it to be considered complete. Respondents Anstalt and King County do not dispute that the ordinance appears to require building setback lines on preliminary plat applications, nor do they dispute the absence of such on the Anstalt plat. Rather, they argue that the requirement for building setback lines was enacted prior to even the adoption of the vested rights doctrine, and that the requirement has been administratively ignored for at least 24 years.

RCW 58.17.033 requires counties to *define* the term "fully completed" as it relates to preliminary plats. King County did not do this — there were no changes to the ordinances in response to RCW 58.17.033 during the period in question. It was not until 1990 that King County enacted KCC 19.36.045, which specifically defines the contents of a "fully completed application" for purposes of the statute. Prior to this time, the actual requirements for vesting were confusing at best.

Although we find RCW 58.17.033 to be unambiguous in its requirements,[3] we find the actual requirements for a fully completed application in King County at the time in question to be highly ambiguous. There was obvious confusion over which ordinance, if any, should define the requirements for a fully completed application for purposes of vesting. Former KCC 19.28.030, upon which Friends relies,

---

[3]Both Anstalt and King County raise the argument that this application was sufficiently complete for purposes of review. It is true that at common law, the general rule is that an application need only be "sufficiently complete" in order to vest. *Valley View Indus. Park v. Redmond*, 107 Wn.2d 621, 638, 733 P.2d 182 (1987). In statutorily extending vesting rights where none previously existed, however, the Legislature has clearly abrogated this common law rule in the case of preliminary plat applications. This statute, while taking a "zero tolerance" approach to completeness, leaves the definition of a "completed application" entirely in the hands of local governments. The burden to comply fully with these requirements is on the applicant. *Taylor v. Stevens Cy.*, 111 Wn.2d 159, 169-70, 759 P.2d 447 (1988).

was enacted in 1948, 6 years before this court first applied the modern concept of vesting to building permits, and decades before the Legislature decided to extend this concept to plat applications. *See State ex rel. Ogden v. Bellevue*, 45 Wn.2d 492, 275 P.2d 899 (1954). More recently, the Council has enacted the standardized yard requirements of KCC 21.18.100 to regulate the correct setbacks. This may render the visual depiction of such setbacks called for in former KCC 19.28.030 redundant. Finally, BALD contends that the setback lines requirement of former KCC 19.28.030 has not been enforced for a quarter of a century, in part because of this requirement for standardized yards.

■ ■ We do not accept BALD's argument that former KCC 19.28.030 has been altered through administrative neglect at face value. As we have stated before, "[t]he duty of those empowered to enforce the codes and ordinances of the [county] is to ensure compliance therewith and not to devise anonymous procedures available . . . in an arbitrary and uncertain fashion." *Eastlake Comm'ty Coun. v. Roanoke Assocs., Inc.*, 82 Wn.2d 475, 482, 513 P.2d 36, 76 A.L.R.3d 360 (1973). However, the applicant here attempted in good faith to comply with the uncertain parameters then in force. BALD's failure to enforce certain sections of King County's ordinances only served to heighten this confusion. As this court has previously noted, vesting procedures which are "vague and discretionary" cannot be used to deny an applicant vested rights. *West Main*, 106 Wn.2d at 53. *See also Adams v. Thurston Cy.*, 70 Wn. App. 471, 855 P.2d 284 (1993). Hence, we conclude that Anstalt's application, which complied with former KCC 19.28.030 as interpreted by BALD, did vest upon submission.[4] Nonetheless, once King

---

[4]Friends makes what it deems a separate argument that the Anstalt application could not vest because it was not in full compliance with the requirements of "G" zoning. *See, e.g., Valley View*, 107 Wn.2d at 638 (in order to vest, application must comply with existing zoning). In enacting RCW 58.17.033, the Legislature placed the authority for defining the requirements for vesting solely in the hands of local governments. If all of the requirements of the local ordinance dealing with vesting are met, the application will vest. We find that Anstalt did meet such requirements. The question of compliance with existing zoning is more properly dealt with in deciding whether the Council abused its discretion in approving Anstalt's application.

County made clear the requirements for a fully completed application in KCC 19.36.045, the unequivocal terms of that ordinance govern vesting, including its explicit incorporation of the requirements of former KCC 19.28.030.

We next address Friends' second argument, which is that the Council did not have the authority to approve the application subject to future compliance with applicable zoning laws and ordinances. Although Anstalt and the County contend that this argument was not properly raised, Friends' argument rests on statutory mandates of which the Council was undoubtedly aware. Moreover, the issue Friends raises involves the average lot size shown in the application, which has been an issue of contention throughout these proceedings.

The core of Friends' claim involves lot averaging. The "G" zone requires a minimum lot size of 35,000 square feet. KCC 21.24.030. Individual lots can fall below this minimum through the averaging of lot sizes and, more importantly, by crediting the land area lying within the right of way of the proposed subdivision's roads. KCC 21.24.030(B); KCC 21.08.080. Anstalt utilized lot averaging, including the areas in rights of way, in order to meet the minimum requirements of the "G" zone. However, an applicant is forbidden from including the areas under rights of way if the preliminary plat plan will exceed the density set by an adopted community plan. KCC 21.08.080(C)(2).

The Bear Creek Middle Plan, which was applicable to the Anstalt property, required minimum 5-acre lots. The hearing examiner specifically found that the applicant's preliminary plat violated the strictures of KCC 21.08.080(C)(2). CP, at 342 (hearing examiner's report, finding 19). Nevertheless, the examiner interpreted the ordinance in such a way that the applicant could meet the minimum lot requirements of the "G" zone:

[A]rea within right-of-way to be dedicated, but not constructed, and which will be maintained as open space for at least the duration of the present community plan and area

zoning, is more akin to "permanent open space" than "streets" for the purposes of KCC 21.08.080 (computation of lot area). *That area will remain as open space unless and until the Comprehensive Plan density for the area is increased.* Therefore, the purpose of [KCC] 21.08.080. C.2., . . . is not compromised by crediting dedicated right of way which serves as open space for so long as the area remains rural.

(Italics ours.) CP, at 344 (hearing examiner's report, conclusion 10).

Friends contends that this use of right of way violates the clear wording of the zoning code, and that because of this, the Council could not approve this preliminary plat. Friends argues that the hearing examiner abandoned his statutory duty to "assure conformance of the proposed subdivision to the general purposes of the comprehensive plan and to planning standards and specifications as adopted by the . . . county". RCW 58.17.100. More importantly, Friends contends that RCW 58.17.195 specifically governs this situation and mandates that the County deny this application. That statute provides:

No plat or short plat may be approved unless the city, town, or county makes a formal written finding of fact that the proposed subdivision or proposed short subdivision is in conformity with any applicable zoning ordinance or other land use controls which may exist.

RCW 58.17.195.

■ Anstalt and King County contend that this statute does not apply to preliminary plat applications. RCW 58.17 provides statutory definitions of "plat", "preliminary plat" and "final plat" and provides that these definitions apply "unless the context or subject matter *clearly* requires otherwise". (Italics ours.) RCW 58.17.020. "Plat" is defined as "a map or representation of a subdivision, showing thereon the division of a tract or parcel of land into lots, blocks, streets and alleys or other divisions and dedications". RCW 58.17-.020(2). As such, the definition encompasses both "preliminary plat" and "final plat". *Compare* RCW 58.17.020(2) *with* RCW 58.17.020(4), (5). The context of RCW 58.17.195 does not clearly preclude reading the statute to include prelimi-

nary plats, and such a reading is also in accord with case law. *See Loveless v. Yantis*, 82 Wn.2d 754, 760-61, 513 P.2d 1023 (1973) (preliminary plat must be rejected if it contains clear zoning violations). We hold that RCW 58.17.195 does apply to preliminary plat applications.

■ Nonetheless, we also find that the statute was not violated. The substance of Friends' claim is that the hearing examiner's interpretation of the lot averaging statutes was faulty, and that the Council's later conditioning of final approval on the applicant meeting all requirements of the "G" zone was an abrogation of its responsibility. Here, the hearing examiner made a determination that a sufficient amount of "right-of-way" would actually remain open space, and that with this condition, the minimum lot sizes would be met. Specific conditions were imposed governing the location of streets, the reduction of the number of lots and for meeting all requirements of the "G" zone. *See* CP, at 345, 349-50, 352 (hearing examiner's report, recommendations 1, 3, 11, 12, 13, 14, 17, 21, 22). The preliminary plat application cannot be approved if the applicant cannot show that its plat is able to comply with all relevant requirements. RCW 58.17.195. It is unchallenged that compliance with the mandated conditions will result in compliance with all of the requirements of the "G" zone. Final approval *cannot* be granted if these conditions are not met. RCW 58.17.110. The approved preliminary plat application does not, on its face, violate the zoning ordinances. Unlike the situation in *Loveless*, where approval would have condoned clear zoning violations, the applicant here made, and the examiner and Council found, a threshold showing of an ability to comply with applicable zoning.

A preliminary plat application is meant to give local governments and the public an approximate picture of how the final subdivision will look. RCW 58.17.020(4). It is to be expected that modifications will be made during the give and take of the approval process. Although it is up to local governments to decide what level of specificity they will require from a developer in its initial application, RCW

58.17.033, they may not cause the vesting of the application to be contingent on future events or decisions, nor make the application process so odious that completion is nearly impossible. *West Main*, 106 Wn.2d at 52-53; *Adams*, 70 Wn. App. at 479. Once a completed application has been submitted, it is to be judged under the laws in effect at the time of submission. If the applicant can show that its plat, with the proper conditions and modifications, will comply with those laws, it will be approved. If not, it will be rejected and the process may begin again. RCW 58.17.140. The applicant bears the burden of complying fully with applicable land use requirements. *Taylor v. Stevens Cy.*, 111 Wn.2d 159, 169-70, 759 P.2d 447 (1988).

Hence, we hold that Anstalt's application did vest upon submission. The Council did not abuse its discretion in approving Anstalt's preliminary plat application subject to modifications which will bring it into compliance with all applicable zoning requirements. The judgment of the Superior Court is affirmed.

ANDERSEN, C.J., and UTTER, BRACHTENBACH, DOLLIVER, SMITH, GUY, JOHNSON, and MADSEN, JJ., concur.