[No. 21844-5-II.    Division Two.    May 28, 1999.]

WILLIAM WEYERHAEUSER, ET AL., *Respondents*, v. PIERCE COUNTY, *Respondent*, LAND RECOVERY, INC., ET AL., *Appellants*.

*Heller Ehrman White & McAuliffe*, by *Noel J. Nightingale* and *Daniel David Syrdal*, for appellants.

*Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim*, by *Melissa K. Bryan* and *William T. Lynn*; and *Meeks Morgan Bauer, P.L.L.C.*, by *Thomas R. Bjorgen*, for respondents.

*Clifford David Allo*, for Tacoma-Pierce County Health Department.

HOUGHTON, J. — Land Recovery, Inc. (LRI) seeks review

of the superior court's ruling upholding a hearing examiner decision issuing LRI a conditional use permit to construct a landfill with certain conditions. LRI argues that the hearing examiner erroneously determined that LRI's application for the permit would be subject to county wetland regulations enacted after submission of its application. We hold that the "vested rights" doctrine applies and that the conditional use permit application is subject to the permitting statutes and ordinances in effect at the time the original application was submitted. Both the superior court and the hearing examiner erred in requiring LRI to comply with later-enacted wetland management regulations. Therefore, we reverse the superior court and remand to the hearing examiner.

## FACTS
### Proposed Landfill Project

LRI collects and disposes of solid wastes in Pierce County, where it also operates the Hidden Valley Landfill. Because this landfill was expected to reach capacity by the end of 1998, under a contract between LRI and the Tacoma-Pierce County Health Authority, LRI began searching for a new solid waste disposal site in 1986.

LRI located a 320-acre site in southeast Pierce County adjacent to land owned by William and Gail Weyerhaeuser. In December 1989, LRI applied to Pierce County (County) for a conditional use permit[1] to construct a municipal solid waste landfill on this site. LRI expected to operate the landfill for 20 years, taking in 30 million cubic yards of solid waste. Portions of the site lie within a 100-year flood plain and there are about 70 acres of Category II wetlands[2] on the parcel. The project will result in the cutting and fill-

---

[1] A "conditional use permit" is a permitted exception to zoning ordinances; it allows a property owner to use his or her property in a manner that the zoning regulations expressly permit under conditions specified in the regulations. BLACK'S LAW DICTIONARY 1399 (6th ed. 1990) (see definition of "special use").

[2] Category II wetlands are "those regulated wetlands of significant resource value based on significant functional value and diversity, wetland communities of

ing of about 30 acres of these wetlands, permanently destroying 21.6 wetland acres. To mitigate this environmental damage, the project provides for the creation, restoration, and enhancement of wetlands elsewhere on the site. A hearing examiner later determined there would be no net loss of wetlands due to the project's wetland creation and enhancement.[3]

On November 20, 1990, the County issued an environmental impact statement (EIS) for the proposed landfill project as required by the State Environmental Policy Act (SEPA). Appealing to the County, the Weyerhaeusers and other members of the community challenged the adequacy of the EIS. In December 1990, a County hearing examiner addressed the public's concerns and held hearings to address the adequacy of the EIS and LRI's conditional use permit application. During the hearings, the Weyerhaeusers and LRI presented extensive expert testimony. The hearing examiner released a report and decision on April 10, 1991, approved the conditional use permit application (subject to certain conditions), and dismissed the EIS appeals.

The hearing examiner's decision was appealed to the Pierce County Council (Council), which, following a public hearing and upon further review, remanded the hearing examiner's decision on November 8, 1991, for additional findings and conclusions. Upon remand, on January 31, 1992, the hearing examiner issued a second report and decision with additional findings and conclusions, once again approving the permit. Following an additional public hear-

---

infrequent occurrence, and other attributes which may not be adequately replicated through creation or restoration." PIERCE COUNTY CODE (PCC) 18E.30.020(B) (former PCC 17.12.030(B)) (recodified December 1998 as PIERCE COUNTY CODE 18E.30.020); *see infra* n.7.

[3]The actual "footprint" of the proposed landfill rests on 168 of the 320 acres, and a portion of the site outside the landfill will consist primarily of buffers and wetland mitigation areas. The site is also underlaid by a thick, continuous layer of low permeability material, "glacial till," that overlays and protects the aquifer (stratum of ground water) below the site. Based upon these features, the hearing examiner concluded that the aquifer "is not vulnerable to potential groundwater contamination" from the landfill.

ing, the Council, in May 1992, approved the hearing examiner's decision and dismissed the EIS appeals. The Council also denied a motion for reconsideration.

The Weyerhaeusers then petitioned the superior court for a writ of review. Upon review, on February 12, 1993, the superior court reversed the Council's approval of the conditional use permit. Thereafter, LRI and the County petitioned the Supreme Court for direct review. The Supreme Court granted review, affirmed the lower court's reversal of the Council's approval of the permit, and remanded the case for additional hearings. *See Weyerhaeuser v. Pierce County*, 124 Wn.2d 26, 873 P.2d 498 (1994).[4]

The hearing examiner held the additional hearings[5] required by the Supreme Court and issued a final decision on January 2, 1996, approving LRI's request for a conditional use permit subject to certain conditions. The hearing examiner's decision required LRI to obtain a wetlands permit under Pierce County Wetland Management Regulations enacted in 1992. LRI appealed this decision to the superior court,[6] which reviewed the record before the hearing examiner under standards set forth under Washington's Land Use Petition Act (LUPA), RCW 36.70C. According to

---

[4]The Supreme Court held that (1) landowners were entitled to cross-examine County staff involved with producing the report and EIS; (2) the hearing examiner's findings and conclusions did not adequately support his decision; (3) the EIS was inadequate as a matter of law; and (4) the proposed project was required to comply with the county solid waste management plan. *Weyerhaeuser,* 124 Wn.2d 26.

[5]In October 1994, the County informed LRI that it would take no further action in processing its 1989 conditional use permit application, and that LRI would need to file a new application if it wanted to process the conditional use permit application for the landfill. Instead, LRI sought a writ of mandamus in superior court, which the court granted on January 13, 1995, ordering the County to initiate and complete the processing of LRI's 1989 application. The County continued processing and reviewing the application accordingly.

[6]LRI was the cross-appellant below as the Weyerhaeusers also appealed to the superior court. More specifically, the Weyerhaeusers challenged the hearing examiner's approval of the conditional use permit and the Tacoma-Pierce County Health Department's issuance of a permit to operate the landfill. Finding no errors in those decisions, however, the superior court rejected the Weyerhaeusers' contentions and upheld the issuance of both permits. The Weyerhaeusers have not appealed the superior court ruling.

the superior court, however, under LUPA, "[n]one of the specific errors or arguments by . . . LRI provide[d] any basis for granting the relief requested." And thus, finding no reversible errors, the superior court affirmed the hearing examiner's decision.

## History of Enactments

In 1989, when LRI submitted its application for a conditional use permit, the Pierce County Grading, Filling, and Clearing Ordinance regulated wetland activities. PIERCE COUNTY ORDINANCE 87-109 (1987). This ordinance expressly exempted solid waste disposal sites. *See* ORDINANCE 87-109 § 1.01(B). Thereafter, the County adopted the Site Development Ordinance, replacing the earlier Grading, Filling, and Clearing Ordinance. PIERCE COUNTY ORDINANCE 90-132 (1990).

In 1990, the Legislature adopted the Growth Management Act (GMA), RCW 36.70A, and instituted significant changes in land use laws. The GMA required counties and cities to adopt ordinances protecting wetlands and other critical areas. *See* RCW 36.70A.060 and .170. Accordingly, in 1992, the County adopted the Wetlands Management Regulations,[7] which categorized wetlands based upon their environmental value. *See* former PIERCE COUNTY CODE 17.12.030. Under these regulations, filling Category II wetlands was permitted only by the granting of a "Reasonable Use Exception," which required a public hearing and a decision by a hearing examiner. Former PCC 17.12.080(D).

LRI seeks review of the superior court's decision to the extent it affirms the hearing examiner's decision requiring LRI to obtain a wetlands permit under applicable county

---

[7]When this case was filed, the Pierce County "Wetland Management Regulations" were codified in Chapter 17.12 of the PIERCE COUNTY CODE. In December 1998, this chapter was recodified under Chapter 18E.30, "Wetlands," within Title 18E, "Development Regulations-Critical Areas."

regulations enacted after LRI submitted its conditional use permit application.[8]

## ANALYSIS
### Standard of Review

LUPA provides a statutory standard for review of land use petitions. Under RCW 36.70C.130, an appellate court may grant relief from a land use decision if the petitioner carries its burden in establishing one of six standards of relief:

 (a) The body or officer that made the land use decision engaged in unlawful procedure or failed to follow a prescribed process, unless the error was harmless;

 (b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;

 (c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court;

 (d) The land use decision is a clearly erroneous application of the law to the facts;

 (e) The land use decision is outside the authority or jurisdiction of the body or officer making the decision; or

 (f) The land use decision violates the constitutional rights of the party seeking relief.

*King County v. Central Puget Sound Growth Management Hearings Bd.*, 91 Wn. App. 1, 26, 951 P.2d 1151, *review granted*, 136 Wn.2d 1020 (1998). To grant relief under this chapter, an appellate court need not find that the local jurisdiction engaged in arbitrary and capricious conduct. RCW 36.70C.130(2). Furthermore, an appellate court applies these standards in reviewing a decision based upon the record created before the hearing examiner. *Central Puget Sound*, 91 Wn. App. at 26 (citing RCW 36.70C.120(1); 36.70C.130(1)).

---

[8]*See supra* n.6.

LRI contends the hearing examiner erroneously concluded, as a matter of law under RCW 36.70C.130(1)(b), that LRI was required to obtain a wetlands permit under the Pierce County Wetland Management Regulations. According to LRI, its conditional use permit application to construct a landfill should be reviewed and evaluated under the land development laws in effect at the time of its application in December 1989. The regulations governing wetlands that the hearing examiner concluded LRI must follow were not promulgated until 1992. LRI submits, therefore, that under the "vested rights doctrine," its application for a conditional use permit for the proposed landfill project should not be subjected to the later-enacted wetland regulations.

We agree with LRI. Under RCW 36.70C.130(1)(b) of LUPA, the conclusion of the hearing examiner, in subjecting LRI's conditional use permit application to the later-enacted wetland regulations, constituted an erroneous interpretation of law.

### The "Vested Rights Doctrine"

■■ Under the "vested rights doctrine" recognized in Washington,[9] developers filing a timely and complete land use application obtain a vested right to develop land in accordance with the land use laws and regulations in effect at the time of application.[10] *Erickson & Assocs., Inc. v. McLerran*, 123 Wn.2d 864, 867-68, 872 P.2d 1090 (1994); *West Main Assocs. v. City of Bellevue*, 106 Wn.2d 47, 50-51, 720 P.2d 782 (1986); *Thurston County Rental Owners Ass'n v.*

---

[9]Washington adopted and maintains a minority position in recognizing vested property rights and the protection of those rights against subsequently adopted land development regulations. *Rhod-A-Zalea & 35th, Inc. v. Snohomish County*, 136 Wn.2d 1, 6, 959 P.2d 1024 (1998); *see Noble Manor Co. v. Pierce County*, 133 Wn.2d 269, 280, 943 P.2d 1378 (1997) (vested rights doctrine is minority rule among jurisdictions); *see also Mercer Enters., Inc. v. City of Bremerton*, 93 Wn.2d 624, 627, 611 P.2d 1237 (1980) (retroactive effect of later zoning regulations not recognized in Washington).

[10]The vested rights doctrine is codified in statute for only two types of land use permit applications, building permits, RCW 19.27.095, and subdivision permits, RCW 58.17.033.

*Thurston County*, 85 Wn. App. 171, 182, 931 P.2d 208, *review denied*, 132 Wn.2d 1010 (1997); *Adams v. Thurston County*, 70 Wn. App. 471, 475, 855 P.2d 284 (1993). Vesting "fixes" the rules that will govern the land development regardless of later changes in zoning or other land use regulations. *Erickson & Assocs., Inc.*, 123 Wn.2d at 868; *West Main Assocs.*, 106 Wn.2d at 51; *Vashon Island Comm. for Self-Gov't v. Boundary Review Bd.*, 127 Wn.2d 759, 767-68, 903 P.2d 953 (1995); *see Hull v. Hunt*, 53 Wn.2d 125, 130, 331 P.2d 856 (1958) (vesting rule provides a "date certain" on which the right to develop land vests).

The vesting doctrine provides a measure of certainty to developers and protects their expectations against fluctuating land use policy. *Friends of the Law v. King County*, 123 Wn.2d 518, 522, 869 P.2d 1056 (1994); *West Main Assocs.*, 106 Wn.2d at 51. The doctrine is based upon constitutional principles of fairness and due process, acknowledging that development rights are valuable and protected property interests. *Vashon Island*, 127 Wn.2d at 768; *Erickson & Assocs., Inc.*, 123 Wn.2d at 870; *see also* Frederick D. Huebner, *Washington's Zoning Vested Rights Doctrine*, 57 WASH. L. REV. 139 n.11 (1981) (characterizing certain rights as "vested" signifies a conclusory description of a right or interest that is sufficiently secure or fixed such that divestment of that right is unfair or violates due process) (citations omitted).

But there are also important competing policy concerns involved in vesting rights for land use. *Noble Manor Co. v. Pierce County*, 133 Wn.2d 269, 280, 943 P.2d 1378 (1997). As the Supreme Court explained,

> development interests protected by the vested rights doctrine come at a cost to the public interest because the practical effect of recognizing a vested right is to sanction the creation of a new nonconforming use.

*Noble Manor Co.*, 133 Wn.2d at 280, citing *Erickson & Assocs., Inc.*, 123 Wn.2d at 873-74. The *Erickson* court recognized the "tension between public and private

interests" inherent in adoption of the vested rights doctrine, in that a proposed development that does not conform to later-adopted laws is necessarily inimical to the public interests embodied in those laws. *Erickson*, 123 Wn.2d at 873-74. Thus, recognizing a vested right subverts and compromises the public interest. *Id.* at 874. On the other hand, strictly enforcing the later-enacted laws, in disregard for the developer's expectations against fluctuating land use requirements, impinges upon the developer's due process interests in certainty and fairness. *See Noble Manor Co.*, 133 Wn.2d at 280-83; *see also Erickson & Assocs., Inc.*, 123 Wn.2d at 870 ("promoting a date certain vesting point" protects property owners' due process rights under new land use ordinances).

Based upon the vested rights doctrine, LRI asserts that its right to develop the landfill project vested in 1989 when it submitted its application for a conditional use permit. The court in *Beach v. Board of Adjustment*, 73 Wn.2d 343, 438 P.2d 617 (1968),[11] addressed the vested rights doctrine as applied to a conditional use permit. The issue in *Beach* was whether a verbatim record of proceedings was required to establish an adequate record for review. Holding that a verbatim record of administrative proceedings was necessary to enable judicial review, the court remanded the case for a new hearing. *Id.* at 347. But, in remanding, the court stated that the conditional use permit application was to be measured by the land use regulations in effect at the time the application was filed. *Id.* The court explained that the

---

[11]*Cf. Rhod-A-Zalea*, 136 Wn.2d 1. In *Rhod-A-Zalea*, the court addressed the question of whether a nonconforming land use was subject to later-enacted health and safety regulations. Here, in contrast, we are concerned with LRI's *application* for a conditional use permit in determining which set of rules govern its approval; that is, whether the rules in effect at the time of its application apply or whether LRI's project should also have to comply with regulations enacted after it submitted its conditional use permit application. We are not asked to determine whether LRI's proposed project, subsequent to an issuance of a conditional use permit, should be exempted from compliance with later-enacted police power land use regulations. As the Supreme Court in *Rhod-A-Zalea* explained, the vested rights doctrine "applies only to permit *applications*"—a situation that was not before that court. *Id.* at 16 (emphasis added).

"subsequent change in the zoning ordinance does not operate retroactively so as to affect vested rights." *Id.*

The vesting rule has also been applied in a number of other contexts.[12] For instance, the court in *Noble Manor Co.*, 133 Wn.2d 269, recognized vesting with respect to an application for land division under RCW 58.17.033. At issue in *Noble Manor Co.* was the question of whether the filing of a complete application for a short subdivision vested the builder's rights only to divide the property, that is, as to the subdivision laws, or if the short plat application also vested the right to develop property under other land use and zoning laws in effect at the time of application. *Id.* at 274. Pierce County argued that the only right vested was to divide the property into smaller lots, that is, as to the laws governing short platting, and thus no other land use or development rights vested. But the developer argued that the right to divide the land without the right to develop it was meaningless unless its rights also vested for the other proposed uses disclosed in its initial application. *Id.* at 277.

▮ Applying the vesting rule, the Supreme Court held that the developer obtained a vested right not only to subdivide the property under the laws at the time of application, but also to develop its land in accord with the zoning and land use laws existing at the time the developer submitted the short plat application. *Noble Manor Co.*, 133 Wn.2d at 285. As the court explained,

> if the County requires an applicant to apply for a use for the property in the subdivision application, and the applicant discloses the requested use, then the applicant has the right to

---

[12]*See e.g., Friends of the Law*, 123 Wn.2d at 522 (subdivision permit); *Ford v. Bellingham-Whatom County Dist. Bd. of Health*, 16 Wn. App. 709, 715, 558 P.2d 821 (1977) (septic tank permit); *Talbot v. Gray*, 11 Wn. App. 807, 811, 525 P.2d 801 (1974) (shoreline permit), *review denied*, 85 Wn.2d 1001 (1975); *Juanita Bay Valley Community Ass'n v. City of Kirkland*, 9 Wn. App. 59, 83-84, 510 P.2d 1140 (grading permit), *review denied*, 83 Wn.2d 1002 (1973).

have the application considered for that use under the laws existing on the date of the application.

*Noble Manor Co.*, 133 Wn.2d at 278. If vesting were limited to the right to divide land with no assurance that the land could be developed, no protection would be afforded to the developer. *Id.* In the court's view, a vested right to subdivide the property without extension of the right to develop the land was "an empty right." *Id.* at 280. The court, however, qualified its holding, noting that not all conceivable uses allowed by the laws in effect at the time of application vested, but only those "specific use[s]" disclosed in the application. *Id.* at 285.

Here, based upon *Noble Manor Co.* and Washington's steadfast adherence to the vested rights doctrine, we are constrained to hold that the hearing examiner erred in concluding that LRI's conditional use permit application was subject to the wetland regulations enacted by the County after LRI's application.

LRI submitted a complete conditional use permit application disclosing its intentions and proposed uses as to the wetlands. Thus, LRI's rights vested as to the laws governing applications for conditional use permits and as to the regulations governing wetland activities applicable at the time of LRI's application. LRI's landfill project proposed extensive activity involving wetlands, ranging from the cutting and clearing of significant wetland acreage to the creation and enhancement of the same. Wetland development, therefore, was not only foreseeable at the time of application, but also necessary and essential to the project's successful development because a substantial part of the proposed landfill site is situated upon 70 acres of wetlands.

LRI disclosed all of the proposed uses of the wetlands in its application for the conditional use permit. As the hearing examiner stated in his January 2, 1999 decision approving the permit, LRI "developed a wetlands mitigation and monitoring plan" and the plan's "basic features" included the proposed activities on the wetlands.

Here, a vested right for the conditional use permit, but not for land use and development, would be "an empty right" as wetland development was an integral component of the project. Declining to recognize vesting as to the wetland regulations would not only increase the procedural and financial burdens borne by LRI in resubmitting its application to comply with the subsequently enacted laws, but also it would fundamentally and necessarily defeat the project.

Moreover, disregarding LRI's rights to develop the wetlands under the laws applicable in 1989, would inject a level of uncertainty into the project that would frustrate the developer's ability to streamline and plan the project. LRI had a due process right to expect that its project would be subject to fixed rules, as opposed to fluctuating legislative policy, so it could plan its project with reasonable certainty. *See Valley View Indus. Park v. City of Redmond*, 107 Wn.2d 621, 733 P.2d 182 (1987) (because property development rights constitute a valuable property right, due process requires that developers be able to plan projects under fixed rules governing development of land). Without vesting as to the wetland regulations, there would be no "date certain" by which LRI could have fixed its rights to develop the land in an efficient manner. *See Erickson*, 123 Wn.2d at 870 (application of "date certain vesting point" ensures that development rights are not duly oppressed by enactment of new land use ordinances).

We realize that protecting LRI's rights unfortunately will come at the public's expense[13] because part of the project may not be in compliance with the later-enacted wetland regulations. But neither can we disregard the vested rights doctrine, which is well-rooted in Washington case law, and cast aside LRI's due process rights in fairness and certainty.

The decision of the superior court is reversed and the case is remanded for issuance of a conditional use permit

---

[13]We also note that the Tacoma-Pierce County Health Department issued a permit to LRI to operate the proposed landfill, which the trial court affirmed. That ruling has not been appealed. *See supra* n.8.

subject to regulations in effect at the time LRI submitted its application for a conditional use permit.

MORGAN and HUNT, JJ., concur.

Review granted at 139 Wn.2d 1001 (1999).