[No. 34418-1-II.   Division Two.   March 20, 2007.]

JEFF GRIFFIN, *Appellant*, v. THE THURSTON COUNTY BOARD OF HEALTH, *Respondent*.

610

*Allen T. Miller* and *Bruce D. Carter*, for appellant.
*Matthew B. Edwards* (*Owens Davies, PS*), for respondent.

¶1  QUINN-BRINTNALL, J. — The Thurston County Board of Health (Board) denied Jeff Griffin a permit to build an

on-site sewage system (OSS) on his Steamboat Island lot. Griffin's lot is one-fourth the size normally required before the Thurston County Public Health and Social Services Department (Department) will grant an OSS permit. The Department may grant an OSS permit on an undersized lot if the petitioner meets three criteria, including that the petitioner "meets all requirements" in the regulations other than the minimum lot size. THURSTON COUNTY SANITARY CODE (TCSC) art. IV, § 21.4.5.3. The Board denied Griffin's permit because he had received five waivers and setbacks. A superior court reversed. We hold that the "meets all requirements" provision governing the health officer's authority to issue an OSS permit to undersized lots excludes waivers and setbacks. Accordingly, we reverse the superior court's decision and remand with instructions that it reinstate the Board's denial of Griffin's permit.

## FACTS

THE PROPERTY

¶2  Griffin owns a waterfront lot on Steamboat Island, an eight-acre island in Thurston County that has about 42 existing homes on 126 lots. Griffin's lot is vacant and undeveloped but is zoned residential. It is 2,850 square feet: 25 feet wide and 114 feet deep. Before Griffin purchased the property, his realtor warned him that the lot was too small for a septic tank permit and that Griffin would not be able to build a house on the property. Nevertheless, Griffin purchased the lot, applied for an OSS permit, and planned to build a small house.

HEALTH OFFICER

¶3  During his OSS permit application process, Griffin requested that he be relieved of the responsibility of complying with several setback and site requirements of the TCSC. Specifically, he requested (1) a waiver of the winter water table evaluation, (2) a waiver reducing the separation between the septic tank and pump chamber from 10 to 5 feet, (3) a horizontal setback between the disposal compo-

nent and building foundation from 10 to 2 feet, (4) a horizontal setback between the disposal component and adjacent property line from 5 feet, (5) a horizontal setback between the disposal component and the surface water from 100 feet to 75 feet, and (6) a reduction in the minimum design flow for a single-family residence from 240 to 120 gallons per day. Citing TCSC article IV, section 21.4.5, the health officer granted Griffin's six requests. The health officer indicated his belief that if an application met the criteria under TCSC article IV, section 21.4.5,[1] he was obligated to grant an OSS permit and he did so.

HEARING OFFICER

¶4 Several of Griffin's neighbors appealed the decision to the Department. The hearing officer held that section 21.4.5 was a *discretionary* provision and the health officer should not have granted a permit to Griffin because (1) minimum land area and density are significant health issues; (2) Griffin's lot is much smaller and more dense than the typical lot size and density; (3) the waivers and setbacks that Griffin received increased the health concern; and (4) thus, it is proper to take a conservative position on whether to exercise discretion and grant a waiver. The hearing officer also found that the health officer should not have waived the winter water study. The Department's hearing officer denied Griffin's permit.

---

[1] TCSC article IV, section 21.4.5 provides that the health officer may:

Permit the installation of an OSS, where the minimum land area requirements or lot sizes cannot be met, *only* when all of the following criteria are met:

21.4.5.1  The lot is registered as a legal lot of record created prior to January 1, 1995; and

21.4.5.2  The lot is outside an area of special concern where minimum land area has been listed as a design parameter necessary for public health protection; and

21.4.5.3  The proposed system meets all requirements of these regulations other than minimum land area.

Clerk's Papers at 120 (emphasis added).

Board

¶5 Griffin appealed to the Board. Thurston County opposed Griffin's motion, and the interested parties cross-appealed.

¶6 The Board adopted the hearing officer's findings of fact, conclusions, and decision. But the Board apparently disagreed with the hearing officer's conclusion that the winter water study evaluation was erroneously waived. And the Board underlined the word "may" when it reprinted the ordinance, but it did not explicitly base its ruling on its discretionary authority to deny Griffin a permit under article IV, section 21.4.5. Instead, it held that the phrase "meets all requirements" in article IV, section 21.4.5.3 is not fulfilled if the petitioner is granted waivers and setbacks. It reasoned that the word "requirements," construed conservatively in order to protect the public's health, excludes waivers and setbacks.

¶7 One Board member dissented, saying that the phrase "all requirements" is ambiguous and that the Board should construe the statute in Griffin's favor because he complied with the health officer's requests. Through the other two votes, the Board affirmed the Department's permit denial.

Superior Court

¶8 Griffin then appealed to superior court. He argued that the Board erred in its decision and that the ordinance is unconstitutionally vague and violated his vested and substantive due process rights. The superior court ruled orally:

> I'm going to have to disagree with the County Commissioners or at least two of the three in this particular case. I do not find that that language, specifically the term "all requirements," means requirements without waiver. A requirement is a specific standard, and often for standards to apply there may be exceptions. A requirement or rule may still be met if there is an exception to the standard.

Report of Proceedings at 5. Although the superior court reversed the Board's decision, it found no merit in Griffin's

assertions that his constitutional rights were violated. Griffin appeals.

¶9 This appeal, filed under the Land Use Petition Act (LUPA), chapter 36.70C RCW, requires that we answer two questions: (1) does the plain language of the TCSC, article IV, section 21.4.5.1, allow the Board to grant an OSS permit on an undersized lot when the petitioner has received waivers and setbacks and (2) is the ordinance unconstitutional?

## ANALYSIS

STANDARD OF REVIEW

■ ■ ¶10 LUPA governs judicial review of land use decisions. RCW 36.70C.030. As all parties agree, at issue here is a "land use decision" governed by LUPA because Griffin appeals his "application for a project permit . . . required by law before [his] real property may be improved, developed, modified, sold, transferred, or used." RCW 36-.70C.020(1)(a). When reviewing a land use decision, we stand in the same position as the superior court and review the administrative record that was before the Board. *Pavlina v. City of Vancouver*, 122 Wn. App. 520, 525, 94 P.3d 366 (2004); *Citizens for Responsible & Organized Planning v. Chelan County*, 105 Wn. App. 753, 758, 21 P.3d 304 (2001). LUPA requires reversal of the Board's land use decision if the party seeking relief shows that:

(b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;

(c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court; [or]

. . . .

(f) The land use decision violates the constitutional rights of the party seeking relief.

RCW 36.70C.130(1).

¶11 Standards (b) and (f) present questions of law that we review de novo. 7 WASH. STATE BAR ASS'N, WASHINGTON REAL PROPERTY DESKBOOK § 111.4(9), at 111-25 (3d ed. 1996). Standard (c) concerns a factual determination that we review for substantial evidence. 7 WASHINGTON REAL PROPERTY DESKBOOK § 111.4(9), at 111-25.

¶12 "Substantial evidence" is evidence sufficient to convince an unprejudiced, rational person that a finding is true. *Isla Verde Int'l Holdings, Inc. v. City of Camas*, 146 Wn.2d 740, 751-52, 49 P.3d 867 (2002). On review, we weigh all inferences in a light most favorable to the party that prevailed in the highest forum that exercised fact-finding authority. Thurston County prevailed at the Department hearing, the highest forum with fact-finding authority, and thus we view all evidence and reasonable inferences in its favor.

CONSTRUCTION OF ORDINANCE

¶13 Under the ordinance here at issue, the health officer has discretion to permit an OSS installation *only* if three criteria are met. TCSC art. IV, § 21.4.5.1. Under the third criterion, the health officer has discretion to grant an OSS permit for a lot less than the minimum land size only if "[t]he proposed system meets all requirements of these regulations other than minimum land area." Clerk's Papers (CP) at 120. In reviewing this criterion, the Board excluded waivers and setbacks that landowners had received in evaluating whether small lots satisfied "all other requirements." The Board was correct.

¶14 Article IV, section 21.4.5 of the TCSC provides that the health officer may:

Permit the installation of an OSS, where the minimum land area requirements or lot sizes cannot be met, *only* when all of the following criteria are met:

21.4.5.1 The lot is registered as a legal lot of record created prior to January 1, 1995; and

21.4.5.2 The lot is outside an area of special concern where minimum land area has been listed as a design parameter necessary for public health protection; and

21.4.5.3 The proposed system meets all requirements of these regulations other than minimum land area.

CP at 120 (emphasis added).

¶15 Because Griffin's property was one-fourth of the minimum lot size required for the health officer to grant an OSS permit, the health officer could grant the permit *only* if the criteria in article IV, sections 21.4.5.1, 21.4.5.2, and 21.4.5.3 were satisfied. *See* TCSC, art. IV, § 21 tbl. VII at 4-58 (setting minimum lot size at 12,500 square feet, where Griffin's lot is 2,850 square feet).

¶16 When reviewing ordinances, we first attempt to give effect to the plain meaning of the words. If a provision's meaning is plain on its face, there is no need for interpretation and we give effect to the legislative body's plain meaning. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). To ascertain a provision's plain meaning, we examine the ordinance as well as other provisions in the same code. *Sheehan v. Cent. Puget Sound Reg'l Transit Auth.*, 155 Wn.2d 790, 797, 123 P.3d 88 (2005). Only when no plain, unambiguous meaning appears through this inquiry do we resort to aids of statutory construction. *Campbell & Gwinn*, 146 Wn.2d at 12.

¶17 We must give effect to all provisions of an ordinance and may not interpret an ordinance in a way that renders a portion meaningless or superfluous. *Cobra Roofing Servs., Inc. v. Dep't of Labor & Indus.*, 157 Wn.2d 90, 99, 135 P.3d 913 (2006). Under this principle, the "all requirements" portion of the ordinance at issue here cannot include "requirements" that have been waived or set back. If "all requirements" included waivers and setbacks, the language would be meaningless and superfluous. Every OSS petitioner, regardless of lot size, is required to comply with the TCSC's provisions or else obtain waivers and setbacks. Thus, the phrase is meaningful only if the application's sole deficiency is lot size. The Board properly construed the

ordinance to mean that an undersized lot must meet "all requirements" without waivers and setbacks in order to trigger the health officer's authority to exercise discretion and grant an OSS permit to an undersized lot.

SUBSTANTIAL EVIDENCE

¶18   We now review the finding that Griffin received waivers and setbacks for substantial evidence. Griffin asserts that the five variances that he received were not waivers but were, instead, "equivalent methods for achieving compliance with [the TCSC's] requirements." Br. of Resp't at 32-33. If Griffin did not receive waivers, the Board could not properly deny Griffin an OSS permit on the ground that the ordinance's "all requirements" provision was not fulfilled.

¶19   As used here, "waiver" is not a precise term of legal significance but, instead, is a term that the Department employs in common use. *See* BRYAN A. GARNER, A DICTIONARY OF MODERN LEGAL USAGE 923 (2d ed. 1995) (defining "waiver" as ordinarily meaning "the relinquishment of a legal right" but emphasizing that the word is often used as "an imprecise and generic term"). The Department labeled Griffin's applications "Thurston County On-Site Sewage-Systems Request for Waiver." Administrative R. (AR) at 18. In reviewing Griffin's applications, the case manager filed a "Report Form for Waiver Request." AR at 22. And the health officer similarly referred to the Department's actions as "waivers" and "setbacks." This evidence is substantial and supports the Board's finding that Griffin received waivers rather than meeting certain requirements. Thus, he did not fulfill the ordinance's third criterion: that he satisfy all requirements other than lot size.

¶20   Griffin also mischaracterizes the TCSC as allowing a petitioner to satisfy TCSC requirements via one of several equivalent methods. Griffin requested and received an abdication of the Department's authority to require him to submit a winter water study under TCSC article IV, section 11.4.1 as well as four reductions from the "minimum horizon-

tal separations" listed in TCSC article IV, section 10.1, table 1. The TCSC gives the Department discretion to waive these requirements, but it does not list equivalent methods of compliance. *See* TCSC art. IV, § 10.1, tbl. 1, § 11.4.1. Because Griffin mischaracterizes the TCSC's structure, his argument that waivers are alternate means of satisfying TCSC requirements fails. Griffin does not argue that he did not receive setbacks. He received both waivers and setbacks in lieu of satisfying TCSC requirements. Thus, the Board did not err when it concluded that the hearing officer lacked authority to grant Griffin an OSS permit for his undersized lot because Griffin did not satisfy all requirements except lot size. Because these issues are dispositive, we do not reach the remaining issues of whether the Board properly granted waivers and setbacks.

CONSTITUTIONALITY

¶21 Griffin cross-appeals and asserts three constitutional challenges to the TCSC under the doctrines of vagueness, vested rights, and substantive due process. We review de novo the constitutionality of a land use ordinance and decision. RCW 36.70C.130(1)(f). Griffin has not demonstrated that the TCSC is unconstitutional on its face or as applied.

VAGUENESS

¶22 Griffin first asserts that the TCSC is unconstitutionally vague. A land use ordinance that provides fair warning and allows a person of common intelligence to understand the law's meaning does not violate a party's constitutional rights. *Young v. Pierce County*, 120 Wn. App. 175, 182, 84 P.3d 927 (2004). Courts do not require an unreasonable standard of specificity, and we judge the ordinance as applied, not for facial vagueness. *Young*, 120 Wn. App. at 182. A duly enacted ordinance is presumed constitutional, and the party challenging it must demonstrate that the ordinance is unconstitutional beyond a reasonable doubt. *Kitsap County v. Mattress Outlet*, 153 Wn.2d 506, 509, 104 P.3d 1280 (2005).

¶23 Griffin has not met his burden to prove that the TCSC, article IV, section 21.4.5.1, is unconstitutionally vague. He argues only that (1) he would interpret the ordinance differently, (2) the Board previously interpreted the ordinance differently, and (3) he invested a lot of money because he believed the Board would grant him a permit. Initially, we note that Griffin's real estate agent told him that the property was too small to build on before he purchased it. Moreover, the provision "meets all requirements" allows a person of common intelligence to understand that a landowner who seeks an OSS permit for an undersized lot cannot receive waivers and setbacks in lieu of satisfying all requirements other than lot size. *Young*, 120 Wn. App. at 182. This reading of the plain language is consistent with long-standing principles of statutory construction. *See Davis v. Dep't of Licensing*, 137 Wn.2d 957, 963-64, 977 P.2d 554 (1999). The ordinance is not vague.

VESTED RIGHTS

¶24 Griffin next challenges the ordinance's application under the vested rights doctrine. "Vesting" refers generally to the notion that an agency may consider a land use application only under the statutes and ordinances in effect when the applicant submitted his application. *Friends of the Law v. King County*, 123 Wn.2d 518, 522, 869 P.2d 1056 (1994). Griffin asserts that because the Board previously interpreted the TCSC, article IV, section 21.4.5.1, differently, he had a right to rely on its continued erroneous interpretation of the ordinance and that, therefore, the Board violated his vested rights. But the vested rights doctrine relates to implementing new laws, not correcting a misinterpretation of existing law. *See Friends of the Law*, 123 Wn.2d at 522. TCSC article IV, section 21.4.5.1 was not only in effect when Griffin submitted his land use application, it was in effect when he bought the property with notice that it was unbuildable. The vested rights doctrine does not apply in the manner Griffin suggests.

SUBSTANTIVE DUE PROCESS

¶25 Last, Griffin claims that the Board violated his substantive due process rights. Generally, an issue not raised in a contested case before the Board may not be raised for the first time on review of the Board's decision. *Buechel v. Dep't of Ecology*, 125 Wn.2d 196, 201 n.4, 884 P.2d 910 (1994). Substantive due process analysis is highly fact specific. *See Guimont v. Clarke*, 121 Wn.2d 586, 608-09, 854 P.2d 1 (1993), *cert. denied*, 510 U.S. 1176 (1994). Griffin did not raise this issue before the Board, and without a full factual development on the record, we cannot fairly address this claim. Thus, Griffin waived this claim. *Accord Buechel*, 125 Wn.2d at 201 n.4.

¶26 Reversed and remanded.

BRIDGEWATER and PENOYAR, JJ., concur.